ACCEPTED
01-15-00417-CR
FIRST COURT OF APPEALS
HOUSTON, TEXAS
11/24/2015 9:43:43 AM
CHRISTOPHER PRINE
CLERK

**Nos. 01-15-00416-CR, 01-15-00417-CR, 01-15-00418-CR**

IN THE COURT OF APPEALS
FOR THE FIRST DISTRICT OF TEXAS

FILED IN
1st COURT OF APPEALS
HOUSTON, TEXAS

11/24/2015 9:43:43 AM

CHRISTOPHER A. PRINE
Clerk

TRAVIS MARCELLAUS EDWARDS
*Appellant*

v.

THE STATE OF TEXAS
*Appellee*

On Appeal from Cause Numbers 1353154, 1443321, and 1443322
From the 228th District Court of Harris County, Texas

BRIEF FOR APPELLANT

ALEXANDER BUNIN
Chief Public Defender
Harris County, Texas

DAUCIE SCHINDLER
Assistant Public Defender
Harris County, Texas
Texas Bar Number 24013495
1201 Franklin, 13th Floor
Houston, Texas 77002
Phone: (713) 368-0016
Fax: (713) 386-9278

**Counsel for Appellant**

Oral Argument is Requested

1

## IDENTITY OF PARTIES AND COUNSEL

APPELLANT:        Mr. Travis M. Edwards
                TDCJ No. 01996602
                Garza West Transfer Facility
                4250 Highway 202
                Beeville, Texas 78102

TRIAL PROSECUTOR:      Mr. Aaron Chapman
                Assistant District Attorneys
                Harris County, Texas
                1201 Franklin
                Houston, Texas 77002

DEFENSE COUNSEL AT TRIAL:   Ms. Allie R. Booker
                4801 Woodway, Suite 300E
                Houston, Texas 77056

                Mr. Ronald Ray, Sr.
                1456 FM 1960 West
                Houston, Texas 77090

PRESIDING JUDGE:       Hon. Marc Carter
                228th District Court
                Harris County, Texas
                1201 Franklin,16th Floor
                Houston, Texas 77002

COUNSEL ON APPEAL FOR APPELLANT: Ms. Daucie Schindler
                Assistant Public Defender
                Harris County, Texas
                1201 Franklin, 13th Floor
                Houston, Texas 77002
                Daucie.Schindler@pdo.hctx.net

# TABLE OF CONTENTS

IDENTITY OF PARTIES AND COUNSEL...................................................................... 2

TABLE OF CONTENTS ............................................................................................ 3

INDEX OF AUTHORITIES......................................................................................... 5

STATEMENT OF THE CASE........................................................................................ 7

STATEMENT OF FACTS ............................................................................................. 7

SUMMARY OF THE ARGUMENT ............................................................................ 13

ARGUMENT............................................................................................................ 14

    **ISSUE ONE: The trial court erred by denying Mr. Edwards' Motion to Suppress evidence seized pursuant to a general search warrant.**

        ARGUMENT ................................................................................................. 14

    **ISSUE TWO: The trial court abused its discretion in admitting over objection text messages that the State claimed to have been authored by Mr. Edwards and an unknown individual, where the evidence was not sufficiently authenticated. There was inadequate circumstantial evidence establishing that such evidence was what its proponent claimed it to be, namely, a message actually sent by Mr. Edwards.**

        ARGUMENT ................................................................................................. 18

        APPLICABLE LAW, STANDARD OF REVIEW, AND DISCUSSION ........................ 19

        HARM ANALYSIS .......................................................................................... 24

    **ISSUE THREE: The evidence is legally insufficient to sustain Mr. Edwards' conviction for aggravated robbery because a reasonable doubt exists regarding whether he was in the course of committing theft at the time he allegedly used force against the complainant.**

        STANDARD OF REVIEW.................................................................................. 25

**ISSUE FOUR:** **Without some form of factual sufficiency review, Mr. Edwards is deprived of his right to meaningful review of his conviction for aggravated robbery, as guaranteed by the U.S. Constitution and this Court should conclude that the evidence in this case is factually insufficient to support that conviction.**

ARGUMENT ..................................................................................... 27

PRAYER ............................................................................................ 31

CERTIFICATE OF COMPLIANCE ........................................................ 32

CERTIFICATE OF SERVICE ................................................................ 33

# INDEX OF AUTHORITIES

## Cases

*Angleton v. State*, 971 S.W.2d 65 (Tex. Crim. App. 1998). ................................................. 19

*Brooks v. State*, 323 S.W.3d 893 (Tex. Crim. App. 2010). ...................................... 26, 28, 30

*Campbell v. State*, No. 13-11-00834-CR, 2012 WL 3793431 (Tex. App. -Austin August 31, 2012, no pet.). ............................................................................... 20, 21, 22

*Clewis v. State*, 922 S.W.2d 126 (Tex. Crim. App. 1996). ...................................................... 30

*Coolidge v. New Hampshire*, 403 U.S. 443 (1971) ..................................................... 14, 16, 17

*Druery v. State*, 225 S.W.3d 491 (Tex. Crim. App), cert denied, 128 S.Ct. 627 (2007).. 20

*Griffin v. Illinois*, 351 U.S. 12 (1956). ................................................................................ 27

*Griffin v. State*, 19 A.3d 415 (Md. 2011). ............................................................................ 22

*Hacker v. State*, 389 S.W.3d 860 (Tex. Crim. App. 2014). ................................................ 27

*Hooper v. State*, 214 S.W.3d 9 (Tex. Crim. App. 2007). ...................................................... 27

*In re Winship,* 397 U.S. 358 (1970) ....................................................................................... 28

*Jackson v. Virginia*, 443 U.S. 307 (1979). ...................................................................... 26, 29

*Lemons v. State*, 298 S.W.3d 658 (Tex. App. –Tyler 2009, pet. ref'd). ........................... 17

*Maryland v. Garrison*, 480 U.S. 79 (1987). ..................................................................... 14, 16

*M.L.B. v. S.L.J.*, 519 U.S. 102 (1996). ............................................................................... 28

*Moreno v. State*, 755 S.W.2d 866 (Tex. Crim. App. 1988). ............................................... 26

*Motilla v. State*, 78 S.W.3d 352 (Tex. Crim. App. 2002). ................................................. 24

*Rich v. State*, 160 S.W.3d 575 (Tex. Crim. App. 2005). .................................................... 24

*Riley v. United States*, 13-132, 2014 WL 2864483, ___U.S.___ (June 25, 2014)............. 18

*State v. Dixon*, 13-09-004445-CR, 2010 WL3419231 (Tex. App. -Corpus Christi Aug. 27, 2010, pet. ref'd). ............................................................................................... 17

*Tibbs v. Florida*, 457 U.S. 31 (1982) .................................................................................... 26

*Tienda v. State*, 358 S.W.3d 633 (Tex. Crim. App. 2012). ............................... 19, 20, 21, 22

*Trevino v. Thaler*, 133 S. Ct. 1911 (2013). ................................................................... 28, 29

*United States v. Finley*, 477 F.3d 250 (5th Cir. 2007) ...................................................... 17

*United States v. Leary*, 846 F.2d 592 (10th Cir. 1988). ..................................................... 17

*United States v. Ross*, 456 U.S. 798 (1982) ........................................................................ 15

*United States v. Warshak*, 631 F.3d 266 (6th Cir. 2010) ................................................. 17

*Tolentino v. State*, 638 S.W.2d 499 (Tex. Crim. App. [Panel Op.] 1982) ....................... 14

*Williams v. State*, 235 S.W.3d 742 (Tex. Crim App. 2007). ............................................. 26

*Winfrey v. State*, 323 S.W.3d 875 (Tex. Crim. App. 2010). ............................................... 27

## Statutes

Texas Criminal Procedure Code Ann. Art. 18.01 ............................................................. 14

Texas Penal Code §29.02 .................................................................................................. 25

Texas Penal Code §31.03 .................................................................................................. 25

## Rules

Texas Rules of App. Proc. 44.2(b). ............................................................................. 19, 24

Texas Rules of Evidence 104 ............................................................................................ 19

Texas Rules of Evidence 401 ............................................................................................ 19

Texas Rules of Evidence 901 ...................................................................................... 19, 20

## Constitutional Provisions

U.S. Constitution Amendment IV ..................................................................................... 14

## STATEMENT OF THE CASE

Mr. Edwards was charged by indictment on August 14, 2012, with aggravated assault in cause number 1353154. (1 C.R. at 17). He was charged by indictment on September 30, 2014, with aggravated robbery in cause number 1443321, (2 C.R. at 5), and with felon in possession of a firearm in cause number 1443322. (3 C.R. at 5). The indictments further alleged an enhancement paragraph for a prior conviction for aggravated robbery. Mr. Edwards pled "not guilty" as charged in the indictments. (3 R.R. at 23). After a jury trial, Mr. Edwards was found guilty on all three charges and sentenced to thirty (30) years in the Institutional Division of the Texas Department of Criminal Justice for both the aggravated assault and the aggravated robbery. He was sentenced to ten (10) years for the felon in possession of a weapon charge and all three sentences were ordered to run concurrently. (6 R.R. at 66). Timely Notice of Appeal was filed on April 23, 2015, and undersigned counsel with the Harris County Public Defender's Office was appointed to represent Mr. Edwards on appeal. (1 C.R. at 501-503, 2 C.R. at 59-61, and 3 C.R. at 57-59).

## STATEMENT OF FACTS

Angel Madrazo, a Cuban immigrant to the United States, worked as a security guard for Texas Line Agency Patrol with the assignment of monitoring the admission of patrons to a game room. Only individuals with membership cards were admissible to the game room and he was responsible for refusing admission to nonmembers. Mr. Madrazo wore a security guard's uniform, but he took off the shirt and left it in

his truck when he used the restroom because the restroom was small and had no place to hang clothing. On June 21, 2012, he removed his shirt to use the restroom, but when he returned to his post, two male nonmembers attempted to enter the game room. When he refused admission one of the men pulled out a gun. Unable to retrieve his own weapon quickly enough, Mr. Madrazo kicked the man with the gun causing him to fall backwards and accidently discharge his weapon. That man, who Mr. Madrazo identified in the courtroom as Mr. Edwards, regained his balance and took off running. Mr. Madrazo chased the man and noticed two additional men; one in a car and the other behind the car. A shootout ensued and Mr. Madrazo discharged his weapon at least fifteen times. (4 R.R. at 140-161).

Two patrons of the game room, Katherine Butler and Curtis Young, saw the men attempt to enter and heard several shots fired. Ms. Young was able to see the guard follow the men out of the game room and duck behind a big pillar; firing his gun. Mr. Young was outside and saw an illegally parked car with a man sitting in it. Both of them believed that bullets seemed to be "coming from everywhere." Mr. Young called 911 and he was able to approach Mr. Madrazo and allow him to speak with the 911 operator. (4 R.R. at 95; 110-124).

The first responder to the scene was deputy Tommy Wilks with the Harris County Sheriff's Office. When he arrived at the location he identified a Hispanic male, Mr. Madrazo, and found him to be in possession of a 9-milimeter pistol. Mr.

8

Madrazo gave him the weapon and an empty magazine. Deputy Wilks conducted a protective sweep, secured the scene, and took the statements of witnesses while other officers and the crime scene investigation unit arrived. (5 R.R. at 10-23).

Deputy Gary Clayton with the Harris County Sheriff's Office crime scene unit arrived at the scene and recovered a number of spent shell casings and one firearm from outside the game room, but he was denied access to the interior of the game room. In addition, the vehicle at the scene was processed and it was determined that the ignition system had been broken suggesting that the vehicle had been stolen. A deformed projectile was found on the floor of the vehicle and a cell phone was found on top of the vehicle. Finger prints were lifted from the lid of the trunk and the fingerprints indicated a possible match to Mr. Edwards. (5 R.R. at 26-55).

Deputy Clayton recovered four (4) Winchester Lugar 9-millimeter spent casings, five (5) PPU Lugar 9-millimeter spent casings, one (1) CBC 9-millimeter Lugar spent casing, two (2) Blazer 9-millimeter Lugar spent casings, one (1) Winchester 9-millimeter Lugar spent casing, and one (1) Federal .380 caliber auto spent casing at the scene. (5 R.R. at 83). The gun that was obtained from the security guard at the scene was a 9-millimeter semiautomatic firearm. (5 R.R. at 78). Therefore, nearly all of projectiles recovered were fired from the security guard's gun. (5 R.R. 96).

Deputy Roberto Rincon with the robbery division of the Harris County Sheriff's Office was assigned to the case on June 27, 2012. He produced a photo array that included a picture of Mr. Edwards and he presented it to Mr. Madrazo who identified Mr. Edwards. (4 R.R. at 41-48; 54). Mr. Madrazo also gave a statement indicating that he had discharged his weapon and believed that he had hit one of the suspects. On the day of the robbery, a man named Rory Jones was admitted to the hospital with a gunshot wound and he too was identified as a suspect in the robbery. An employee at the game room, Maria Madina, was able to identify Mr. Jones as one of the shooters at the scene, but she was not able to identify Mr. Edwards. (4 R.R. at 49-58). Accord to Deputy Rincon, Mr. Edwards was originally charged with aggravated assault, not aggravated robbery, because there was no evidence that he "demanded any money." (4 R.R. at 78). In addition, Rebecca Mikulasovich, a DNA analyst with the Harris County Institute of Forensic Sciences, analyzed several swabs for this case and was not able to match any of the samples taken to a DNA sample obtained from Mr. Edwards. (5 R.R. at 132-158).

Tuan Pham, an investigator with the Harris County District Attorney's Office, received the cell phone that was obtained in connection with this case and he downloaded the data from the phone to a thumb drive. He generated a report documenting all of the data obtained from the phone and the phone's SD card

including pictures, e-mails, and text messages that predated and were unrelated to this case.

However, on June 21, 2012, there was a series of text messages suggesting that someone was scoping out an unknown location for purposes of committing a robbery. The text messages were admitted into evidence as follows:

Incoming Text: A lil Mexican man for security. One man, two chicks, Mexicans. They by the door. The Mexican chick in purple got the money.

Outgoing text: So it's four people total. One security guard, two floor workers both ladies and a dude? What side does he have his strap on? Also is he opening the doors to let people out?

Incoming Text: Right side but he old.

Incoming text: He swing the door open wide

Outgoing text: How many people total on the floor, 3 r 4? Whenever its good. We ready.

Incoming text: Yea, he open it and he watching TV with two of the workers talking. The one with the money in the purple got the money.

Outgoing Text: So it's just two ladies n a security guard? I keep asking bcuz I don't won't no surprises.

Incoming text: One other Mexican man in a gray shirt.

Outgoing Text: Do we have a strap?

Incoming Text: Yea, on the right side.

Outgoing Text: We were finding a escape route. Is it still good?

Incoming Text:     Yea

Incoming Text:     They emptying two machines.

Outgoing Text:     Let them empty them all out.  Keep ur eyes open.  They 'bout to hit the back room and count the scrill.

Incoming Text:     Ok.

Outgoing Text:     Where is the employees only room located?

Incoming Text:     In the front.

Outgoing Text:     To the left r right?  Queen, I need specific details.

Incoming Text:     Nall the back, but let me watch them 'cause they signs fucked up.  That's a restroom right in front, but it's two doors in the back.

Incoming Text:     They all doing the machines with the money in a Honeybun box.

Outgoing Text:     Let them finish n when they all on the floor, text me when it's good.

Incoming Text:     Money room back right-hand side on the ATM side.

Incoming Text:     Ok, one chick in the back, but they close at 12.

Outgoing Text:     Is U ready? Can that door be kicked open?  Is the money room open?

Incoming Text:     The chick in black in there and the chain off the door.  What I need to do?

Outgoing text:      If it's cool n that security guard chilling, draw ur tic n hit me.

Incoming Text:     I'm da only person left.  What's good?

Outgoing Text:    When u c us, pull up, cum out,  When he get out.

(5 R.R. at 184-194; State's Exhibit 205).

## SUMMARY OF THE ARGUMENT

The trial court erred in denying Mr. Edward's Motion to Suppress and improperly admitting evidence obtained from a cell phone found at the scene and searched pursuant to an impermissibly general search warrant.  Even if the search warrant is deemed sufficiently specific, the text messages obtained from the phone and attributed to Mr. Edwards and an unknown individual were inadmissible because the state failed to properly authenticate them and the probative value of admission was outweighed by the prejudicial effect.

In addition, Mr. Edwards argues that the evidence is in no way sufficient to support a conviction for aggravated robbery, as there was not even a modicum of evidence that Mr. Edwards took any measure toward committing theft of property. Even if the evidence is legally sufficient, Mr. Edwards will be denied due process of law if this court fails to conduct a factual sufficiency review because the evidence is factually insufficient to support his conviction for aggravated robbery.

**ISSUE ONE: The trial court erred by denying Mr. Edwards' Motion to Suppress evidence seized pursuant to a general search warrant.**

**STANDARD OF REVIEW**

The Fourth Amendment to the United States Constitution requires that "no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the person or things to be seized." U.S. Const amend. IV. Likewise, the Texas Code of Criminal Procedure article 18.01(c) requires a probable cause affidavit to set forth facts establishing that (1) a specific offense has been committed, (2) the item to be seized constitutes evidence of the offense or evidence that a particular person committed the offense, and (3) the item is located at or on the person, place, or thing to be searched. Tex. Code Crim. Proc. Art. 18.01(c); *see Tolentino v. State*, 638 S.W.2d 499, 501 (Tex. Crim. App. [Panel Op.] 1982).

Items, such as data, can only be seized if there is probable cause to support their seizure. *See Coolidge v. New Hampshire*, 403 U.S. 443 (1971). With respect to the particularity requirement, the Supreme Court has recognized that it "ensures that the search will be carefully tailored to its justifications, and will not take on the character of the wide-ranging exploratory searches the Framers intended to prohibit." *Maryland v. Garrison*, 480 U.S. 79, 84 (1987). As a result, "the scope of a lawful search is 'defined by the object of the search and the places in which there is probable cause to

14

believe that it may be found. Just as probable cause to believe that a stolen lawnmower may be found in a garage will not support a warrant to search an upstairs bedroom, probable cause to believe that undocumented aliens are being transported in a van will not justify a warrantless search of a suitcase.'" *Id.* at 84-85 (*citing United States v. Ross*, 456 U.S. 798, 824 (1982)).

Here, the search warrant was overbroad and failed to show that the items seized were contraband, instruments of committing a crime, or evidence of a crime's commission. The search requested by law enforcement here was the very "general" search that precipitated the enactment of the Fourth Amendment. The warrant reads:

> NOW, THEREFORE, you are commanded to enter and search one cell phone, for items and information constituting evidence of an offense, specifically: Aggravated Assault of a Security Officer, Theft of an Automobile, and/or Aggravated Robbery or constitution evidence tending to show that a particular person committed an offense that may be found therein. The phones may be more particularly described as: a Huawei M865 cell phone with black touchscreen and blue case, with serial number #T8U9MA1172104698. The phone was found abandoned on top of a vehicle belonging to complainant Ashley Alexander, at or near 12750 Woodforest, Houston, Texas, on June 21st, 2012. At this time the cellular phone is now in the possession of Affiant at 1201 Franklin St., Houston, Harris County, Texas, and you are commanded to enter this phone for the purpose of searching for and seizing all stored communication located in an electronic mailbox, voicemail, Personal Identification Numbers, text messages, names, numbers and addresses stored in a phone book application, all cell phone memory including flash drives, photographs and any data, video, audio, and cellular number files listed in the memory or stored on this cellular phone, electronic media; digital notes stored within; audio recordings stored within; history of web sites accessed on the world wide web; emails received, sent, deleted, saved, or otherwise; call logs received, sent, deleted, saved or otherwise; phone numbers received, sent,

15

deleted, saved, or otherwise; text messages received, sent, deleted, saved or otherwise; instant messaging received, sent, deleted, saved or otherwise; voice messages received, sent, deleted, saved, or otherwise; photographs received, sent, deleted, saved or otherwise; videos received, sent, deleted, saved, or otherwise.

(See State's Exhibit 4). The Supreme Court has recognized two constitutional protections served by the warrant requirement of the Fourth Amendment. "First, the magistrate's scrutiny is intended to eliminate altogether searches not based on probable cause. The premise here is that any intrusion in the way of the search or seizure is an evil, so that no intrusion at all is justified without a careful prior determination of necessity." *Coolidge*, 403 U.S. at 467. Second, "those searches deemed necessary should be as limited as possible. Here, the specific evil is the 'general warrant' abhorred by the colonists, and the problem is not that of intrusion per se, but of a general, exploratory rummaging in a person's belongings." *Id.*

Therefore, to follow the dictates of the Fourth Amendment and avoid issuing a general warrant, there must be probable cause to seize each item specified in the warrant. Here, the warrant casts a dragnet over data and communications that surely have nothing to do with this case, including those to and from third parties, who will never know of the State's seeing their communications with Mr. Edwards about unrelated matters. With respect to searches of electronic information, careful attention must be paid to the dictates of the particularity requirements of the Fourth

16

Amendment, which limits the "authorization to search to the specific areas and things for which there is probable cause to search." *Garrison*, 480 U.S. at 84.

Any search of an electronic source has the potential to unearth tens or hundreds of thousands of individual documents, pictures, movies, or other constitutionally protected content. It is thus imperative that the State "describe the items to be seized with as much specificity as the government's knowledge and circumstances allow." *United States v. Leary*, 846 F.2d 592, 600 (10th Cir. 1988). The general warrant in this case allowed the State to conduct a "general, exploratory rummaging in a person's belongings" –in this case an individual's cellphone. *Coolidge*, 403 U.S. at 467. This overly broad warrant makes no effort to balance the law enforcement interest against the expectation of privacy cellphone owners have. *See United States v. Warshak*, 631 F.3d 266, 285-86 (6th Cir. 2010).

In *Dixon*, the court found that there was some evidence that Dixon owned the cell phone in question, therefore he had a right to exclude others and he had a reasonable expectation of privacy in his cell phone. *State v. Dixon*, 13-09-00445-CR, 2010 WL 3419231 at *5-6 (Tex. App. –Corpus Christi Aug. 27, 2010, pet. Ref'd). The Corpus Christi Court of Appeals stated that "[a] person has a privacy interest in information contained in a cellular phone." *Id.* at *6(quoting *Lemons v. State*, 298 S.W.3d 658, 662 (Tex. App. –Tyler 2009, pet. Ref'd) citing *United States v. Finley*, 477

17

F.3d 250, 259-60 (5th Cir. 2007)); *see Riley v. United States*, 13-132, 2014 WL 2864483, ___ U.S. ___ (June 25, 2014).

The trial court abused its discretion in denying Mr. Edwards' Motion to Suppress and this constitutes reversible error because the only evidence admitted at trial that even suggests a robbery was intended came from text messages retrieved from the overly broad search of the phone.

**ISSUE TWO:     The trial court abused its discretion in admitting over objection, text messages that the State claimed to have been authored by Mr. Edwards and an unknown individual, where the evidence was not sufficiently authenticated. There was inadequate circumstantial evidence establishing that such evidence was what its proponent claimed it to be, namely, a message actually sent by Mr. Edwards.**

**ARGUMENT**

The problem with the text messages that purport to reflect a conversation between Mr. Edwards and an unknown individual, is that the prosecutor did not take the reasonable steps that were available to authenticate such evidence, *i.e.*, to lessen the possibility that the messages came from someone else posing as Mr. Edwards. The failure of the prosecutor to take the necessary steps to prove that the text messages were what he claimed them to be, *i.e.*, messages sent by Mr. Edwards from his cell phone, left open the possibility that the messages in question were not authentic and were sent by someone else under his name. By allowing the introduction of an exhibit that had not been properly authenticated under Tex. R.

18

Evid. 901, the trial court abused its discretion and Mr. Edwards suffered harm under Tex. R. App. P. 44.2(b).

### APPLICABLE LAW, STANDARD OF REVIEW AND DISCUSSION

The question of whether or not to admit evidence at trial is a preliminary matter to be decided by the trial court. Tex. R. Evid. 104(a). In order to be admissible, the evidence in question must of course be relevant. Tex. R. Evid. 401. The Texas Rules of Evidence define relevant evidence as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." *Id.*

Sometimes the relevancy of the evidence depends upon its source, its identity, or its connection with a particular person, place, thing, or event, in which case the proponent of the evidence must authenticate it before it becomes relevant. *Angleton v. State*, 971 S.W.2d 65 (Tex. Crim. App. 1998). The proponent meets this threshold requirement of authenticity by satisfying the trial court, as part of the court's "gate-keeping" function under rule 104, that the matter in question is in fact what it is claimed to be. Tex. R. Evid. 901(a); *Tienda v. State*, 358 S.W.3d 633, 638 (Tex. Crim. App. 2012). The ultimate question of whether an item of evidence is what the proponent claims is a question for the fact finder. *Id.* In a jury trial, the preliminary question for the trial court to decide is whether the proponent of the proffered

19

evidence has supplied facts that are sufficient to support a reasonable jury determination that the evidence is authentic. *Druery v. State,* 225 S.W.3d 491, 502 (Tex. Crim. App.), *cert. denied,* 128 S. Ct. 627 (2007); *Campbell v. State*, No. 03-11-00834-CR, 2012 WL 3793431 at *3 (Tex. App. -Austin August 31, 2012, no pet.). An appellate court reviews a trial court's decision as to whether evidence is properly authenticated for an abuse of discretion. *Tienda,* 358 S.W.3d at 638.

In *Campbell, supra*, the issue was whether the trial court's introduction of Facebook messages (allegedly sent by the defendant to the complainant) was an abuse of discretion because they were not shown to have actually been sent by the defendant. Thus, the question became whether such evidence had been properly authenticated. The Austin court made the following general comments about Tex. R. Evid. 901, which are applicable here:

> Rule 901 of the Texas Rules of Evidence provides a nonexclusive list of methods for authentication of evidence. *See* Tex.R. Evid. 901. For example, evidence may be authenticated by testimony from a witness with knowledge that a matter is what it is claimed to be. *Id.* R. 901(b)(1). Evidence may also be authenticated by "appearance, contents, substance, internal patterns, or other distinctive characteristics, taken in conjunction with circumstances." *Id.* R. 901(b)(4). In the context of communications, the authentication issue that generally arises is whether the evidence is sufficiently linked to the purported author. With respect to electronic communications-such as e-mails, text messages, and as in this case, Facebook-the rules of evidence, including rule 901, are considered at least generally "adequate to the task." *See Tienda,* 358 S.W.3d at 638. Printouts of emails, internet chat room dialogues, and text messages have all been admitted into evidence when found to be

sufficiently linked to the purported author so as to justify the submission to the jury for its ultimate determination. *See id.* at 639.

Notwithstanding the above, it is important to note that given the nature of electronic communication, the mere fact that a communication has come from a certain electronic source is, without more, not enough to establish that it therefore must have come from a certain person. In *Tienda*, *supra*, which dealt with the admissibility of what was claimed by the State to be a MySpace page of the defendant, the Court of Criminal Appeals pointed out:

> However, mindful that the provenance of such electronic writings can sometimes be open to question—computers can be hacked, protected passwords can be compromised, and cell phones can be purloined—courts in other cases have held that not even the prima facie demonstration required to submit the issue of authentication to the jury has been satisfied. That an email on its face purports to come from a certain person's email address, that the respondent in an internet chat room dialogue purports to identify himself, or that a text message emanates from a cell phone number assigned to the purported author—none of these circumstances, without more, has typically been regarded as sufficient to support a finding of authenticity. *Tienda*, 358 S.W.3d at 641; *see also Tienda*, footnote 35 (a list of citations where authentication of electronic messages was not found to be adequate, where there were no contextual clues to show that the message came both from the particular site *and* from the sender in question).

In *Campbell*, *supra*, the Austin Court of Appeals pointed out a twofold problem with respect to establishing that a Facebook message came from a specific individual:

> Facebook presents an authentication concern that is twofold. First, because anyone can establish a fictitious profile under any name, the

person viewing the profile has no way of knowing whether the profile is legitimate. *Griffin v. State,* 19 A.3d 415, 421 (Md. 2011)(citing David Hector Montes, *Living Our Lives Online: The Privacy Implications of Online Social Networking,* J.L. & Pol'y for the Info. Soc'y, Spring 2009, at 507, 508). Second, because a person may gain access to another person's account by obtaining the user's name and password, the person viewing communications on or from an account profile cannot be certain that the author is in fact the profile owner. *Id.* Thus, the fact that an electronic communication on its face purports to originate from a certain person's social networking account is generally insufficient standing alone to authenticate that person as the author of the communication. *See Tienda,* 358 S.W.3d at 642**.** However, the most appropriate method for authenticating electronic evidence, as with any kind of evidence, **"will often depend on the nature of the evidence and the circumstance of the particular case."** *Id.* at 641**.** *Campbell,* *supra,* 2012 WL 3793431 at *4.

There are differences between the Facebook messages in *Campbell* and the text messages in this case. First, the messages sent from Campbell's Facebook account contained a "unique speech pattern…that Campbell, a native of Jamaica, used in testifying at trial." *Campbell, supra,* 2012 WL 3793431 at *6. No pattern was established in this case by showing any similarity between the text messages attributed to Mr. Edwards and his normal way of speaking or writing.

Anyone in possession of the Mr. Edwards' cellphone could have posted the text message. It is not hard to imagine a different outcome in this case, especially with regard to his conviction of aggravated robbery, if it had turned out that the message allegedly sent from Mr. Edwards had been sent from someone else. In determining whether the context of the text messages suggests that they are authentic, *i.e.,* that

they were really sent by Mr. Edwards, this Court should remain mindful of what available steps the prosecutor could have taken…but didn't bother to take.

The instant case also differs from *Campbell* in that whereas the message in *Campbell* specifically referenced the criminal incident for which Campbell was on trial, the text messages in the instant case did not. Campbell was accused of hitting his girlfriend several times in the face. He specifically alluded to this by stating in the Facebook message "I should never put my hand on you, who is me to do that to you." *Campbell*, *supra*, 2012 WL 3793431 at *5. He also specifically indicated in the message his awareness that he had committed the criminal act he was on trial for ("don't lock me up please I am begging you" and "I am guilty what was I thinking"). In contrast, the text messages here make no specific allusion to any particular location and do not comport with the evidence otherwise admitted describing the scene and the complainant who was described as a "lil Mexican" in the text message, but in actuality is "very tall". (5 R.R. at 188; 4 R.R. at 94).

In summary, the trial court abused its discretion in allowing the text messages into evidence over defense counsel's objection that there was no proper foundation and the probative value does not "substantially outweigh the undue prejudice.' (5 R.R. at 175-180). The trial court's ruling was not within the zone of reasonable disagreement and it was error to admit the text messages.

## HARM ANALYSIS

Because error in the admission of evidence is non-constitutional, the Appellant must show that the error affected his substantial rights. Tex. R. App. P. 44.2(b). A substantial right is affected when the error has a substantial or injurious effect or influence in determining the jury's verdict. *Rich v. State*, 160 S.W.3d 575, 577 (Tex. Crim. App. 2005). In determining whether the error influenced the jury, or only had a slight effect, a reviewing court must consider whether the State emphasized the error, whether the erroneously admitted evidence was cumulative, and whether it was elicited from an expert. *Motilla v. State*, 78 S.W.3d 352, 355 (Tex. Crim. App. 2002).

The prosecutor repeatedly referred to the text messages in closing argument. Without the introduction of the text messages, the State's case turned entirely upon the testimony of the Complainant. The text messages formed the main part of the prosecutor's closing argument (6 R.R. at 31-33). The jury specifically requested the text messages during deliberation, (1 C.R. at 483 and 2 C.R. at 41), and the text messages were not cumulative of other evidence, but in fact the only evidence to suggest an intended theft. As a result, the error in admitting the text messages was harmful under Tex. R. App. P. 44.2(b).

**ISSUE THREE:** The evidence is legally insufficient because a reasonable doubt exists in the record regarding whether Mr. Edwards was in the course of committing theft at the time he used force against the complainant.

Under the Texas Aggravated Robbery statute a person commits robbery if, in the course of committing theft and with intent to obtain or maintain control of the property, he intentionally or knowingly threatens or places another in fear of imminent bodily injury or death. Tex. Penal Code § 29.02(a)(2). A person commits theft if he unlawfully appropriates property with intent to deprive the owner of it. Tex. Penal Code § 31.03(a). Appropriation is unlawful if it is without the owner's effective consent. Tex. Penal code § 31.03(b)(1). A person commits aggravated robbery if he uses or exhibits a deadly weapon during the commission of robbery. Tex. Penal Code § 29.03(a)(2). Thus, Mr. Edwards committed the offense of aggravated robbery as alleged in the indictment if (a) while in the course of unlawfully appropriating property, and (b) without Madrazo's consent (c) with the intent to deprive him of property, (d) Mr. Edwards (e) intentionally or knowingly (f) threatened or placed Madrazo in fear of bodily injury or death (g) while using or exhibiting a deadly weapon. See Tex. Penal Cod §§ 29.02(a)(2), 29.03(a)(2), § 31.03(a), (b)(1).

In order to obtain a valid conviction under this statute, the fact finder must decide that the defendant is guilty "beyond a reasonable doubt," but, ultimately, the

25

evidence on which the case is decided must be sufficient to support the conviction. *See Brooks v. State*, 323 S.W.3d 893 (Tex. Crim. App. 2010); *Jackson v. Virginia*, 443 U.S. 307 (1979). Evidence is legally insufficient when the "only proper verdict" is acquittal. *Tibbs v. Florida*, 457 U.S. 31, 41-42 (1982). The appellate court's role is that of a due process safe guard, ensuring only the rationality of the trier of fact's finding of the essential elements of the offense beyond a reasonable doubt. *Moreno v. State*, 755 S.W.2d 866, 867 (Tex. Crim. App. 1988). Although deference is accorded to the fact finder to weigh the evidence presented and to draw reasonable inferences from the facts, the appellate court must "ensure that the evidence presented actually supports a conclusion that the defendant committed" the criminal offense of which he is accused. *Williams v. State*, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007). Under *Jackson*, there are two circumstances in which evidence is legally insufficient: "(1) the record contains no evidence, or merely a 'modicum' of evidence, probative of an element of the offense, or (2) the evidence conclusively establishes a reasonable doubt.

No witness testified that he attempted to obtain control over their property. In fact, Deputy Robert Rincon testified that Mr. Edwards was not originally charged with aggravated robbery because there was no evidence that he ever "demanded any money." (4 R.R. at 78). There is some suspicion that Mr. Edwards could have been there to take property based on text messages that cannot be affirmatively attributed

to him, but even the text messages are not conclusive evidence of his intent to commit theft as alleged in the indictment. The fact finder is "not permitted to draw conclusions based on speculation." *Hooper v. State*, 214 S.W.3d 9, 16 (Tex. Crim. App. 2007). If the evidence at trial raises only a suspicion of guilt, even a strong suspicion, then that evidence is insufficient. *Winfrey v. State*, 323 S.W.3d 875, 882 (Tex. Crim. App. 2010). Evidence of "suspicion linked to other suspicion" is not enough to sustain a conviction. *Hacker v. State*, 389 S.W.3d 860, 874 (Tex. Crim. App. 2014).

Although Mr. Edwards may have been aggressive in his attempt to enter the game room, the state chose to charge him with aggravated robbery and the evidence at trial fails to prove that he intended to obtain or maintain control of any property. It is impossible to say from the evidence at trial that the acts of Mr. Edwards tended to effect the commission of aggravated robbery. Because the evidence is insufficient to find that Mr. Edwards committed the offense of aggravated robbery as alleged in the indictment he should be acquitted by this court of that offense.

**ISSUE FOUR:** **Without some form of factual sufficiency review, Mr. Edwards is deprived of his right to meaningful review of his conviction for aggravated robbery, as guaranteed by the U.S. Constitution and this Court should conclude that the evidence in this case is factually insufficient to support that conviction.**

If a state gives criminal defendants a right to appeal, the process of appellate review must be consistent with the requirements of due process and equal protection. *See Griffin v. Illinois*, 351 U.S. 12, 18 (1956). The Supreme Court's decisions

concerning access to judicial process reflect both equal protection and due process concerns. "(I)n the Court's Griffin-line cases, '[d]ue process and equal protection principles converge.' …The due process concern homes in on the essential fairness of the state-ordered proceedings anterior to adverse state action." *M.L.B. v. S.L.J.*, 519 U.S. 102, 120 (1996).

In a case from Texas, the Supreme Court said: "[F]or present purposes, a distinction between (1) a State that denies permission to raise [a] claim on direct appeal and (2) a State that in theory grants permission but, as a matter of procedural design and systemic operation, denies a meaningful opportunity to do so is a distinction without a difference." *Trevino v. Thaler*, 133 S.Ct. 1911, 1921 (2013).

The problem with Texas' legal-sufficiency review as applied to criminal appeals post-*Brooks* is this: the courts of appeal have too often used catch phrases like "almost total deference" and "any evidence to support the verdict" to deny meaningful review of whether the State actually satisfied its burden to prove every essential fact necessary to an offense beyond a reasonable doubt. The reasonable doubt standard is "indispensable to command the respect and confidence of the community in applications of criminal law. It is critical that the moral force of the criminal law not be diluted by a standard of proof that leaves people in doubt whether innocent men are being condemned. It is also important in our free society that every individual going about his ordinary affairs have confidence that his

government cannot adjudge him guilty of a criminal offense without a proper factfinder of his guilt with utmost certainty." *In re Winship,* 397 U.S. 358, 364 (1970).

In *Trevino*, the Supreme Court concluded that Texas law did not offer a meaningful opportunity for defendants to present a claim of ineffective assistance of trial counsel on direct appeal. Because of this problem, which the Court considered to be structural constitutional error, the Court decided that the defendant was not procedurally barred from raising a federal habeas claim of ineffective assistance. *Trevino*, 133 S.Ct. at 1921.

In this case, the structural problem relates to how *Jackson* deferential standard of a "scintilla of evidence" impairs meaningful review of whether Mr. Edwards was convicted of aggravated robbery on evidence beyond a reasonable doubt.

When reviewing courts limit their analysis to the question of whether any evidence at all supports a jury's verdict, they can never reach the real question: did the evidence prove *beyond a reasonable doubt* that the defendant was guilty? The "merging" of the legal and factual sufficiency standards of review is not facially problematic, but, as in *Trevino*, the systemic operation of the *Brooks* rule makes it highly unlikely that a defendant will have a meaningful review of evidentiary sufficiency issues.

Even if the evidence were found to be legally sufficient to convict Mr. Edwards of aggravated robbery, it was not factually sufficient under the *pre-Brooks*

29

standard, which required the appellate courts to review the evidence in a neutral light, not in the light most favorable to the verdict. *See Clewis v. State*, 922 S.W.2d 126, 129 (Tex. Crim. App. 1996), overruled by *Brooks v. State*, 323 S.W.3d 893 (Tex. Crim. App. 2010). Viewing all of the evidence in a neutral light, no rational jury could find beyond a reasonable doubt that Mr. Edwards had the intent to obtain and maintain control of the property of the complainant. The evidence was factually insufficient to support the conviction.

## PRAYER

Mr. Edwards prays that this Honorable Court reverse the judgment of the trial court and order a judgment of acquittal as to the aggravated robbery conviction and reverse the judgment of the trial court and order a new trial as to the aggravated assault and felon in possession of a firearm convictions.  Or, in the alternative, Mr. Edwards asks this court to reverse all three convictions and remand to the trial court for a new trial.

Respectfully submitted,

Alexander Bunin
Chief Public Defender

*/s/ Daucie Schindler*
Daucie Schindler
State Bar No. 24013495
Public Defender's Office
Harris County, Texas
Assistant Public Defender
1201 Franklin, 13th Floor
Houston, Texas 77002
Daucie.Schindler@pdo.hctx.net
Tel:  713-274-6717
Fax:  713-368-9278

## CERTIFICATE OF COMPLIANCE

Pursuant to proposed Rule 9.4(i)(3), undersigned counsel certifies that this brief complies with the type-volume limitations of *Tex. R. App. Proc. 9.4(e)(i)*.

1.     Exclusive of the portions exempted by *Tex. R. App. Proc. 9.4 (i)(1)*, this brief contains fewer than 7,142 words printed in a proportionally spaced typeface.

2.     This brief is printed in a proportionally spaced, serif typeface using Garamond 14 point font in text and Garamond 13 point font in footnotes produced by Microsoft Word Software.

3.     Undersigned counsel understands that a material misrepresentation in completing this certificate, or circumvention of the type-volume limits in *Tex. R. App. Proc. 9.4(j)*, may result in the Court's striking this brief and imposing sanctions against the person who signed it.


*/s/ Daucie Schindler*
DAUCIE SCHINDLER

**CERTIFICATE OF SERVICE**

I certify that on the 24th day of November, 2015, a copy of the foregoing instrument has been electronically served upon the Appellate Division of the Harris County District Attorney's Office.

*/s/ Daucie Schindler*
DAUCIE SCHINDLER