# NOS. 12-08-00074-CR
# 12-08-00075-CR
# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *JERRY GLYNN LEMONS,*<br>*APPELLANT* | § | *APPEAL FROM THE SEVENTH* |
| *V.* | § | *JUDICIAL DISTRICT COURT OF* |
| *THE STATE OF TEXAS,*<br>*APPELLEE* | § | *SMITH COUNTY, TEXAS* |

### *OPINION*

Jerry Glynn Lemons appeals his convictions for indecency with a child and possession of child pornography, for which he was sentenced to imprisonment for fourteen years for each offense. In one issue, Appellant argues that the trial court erred in refusing to suppress photographic evidence seized from his cellular telephone. We affirm.

### Background

Appellant was charged by separate indictments with one count of indecency with a child and one count of possession of child pornography. Appellant pleaded "not guilty," and the matter proceeded to a bench trial.

At trial, the State sought to introduce Exhibit 3, a photograph depicting a nude image of fourteen year old N.H. that Tyler Police Department Officers John Thornhill and Kyle Rhodes discovered stored on Appellant's cellular telephone. Appellant objected to the admission of Exhibit 3. Thereafter, the trial court conducted a hearing to consider whether the exhibit should be suppressed based on Appellant's contention that the officers exceeded the scope of his consent in the conduct of their search of his cellular telephone. Upon consideration of the issue, the trial court

declined to suppress Exhibit 3 and admitted it into evidence.

Ultimately, the trial court found Appellant "guilty" as charged on each offense. Following a hearing on punishment, the trial court sentenced Appellant to imprisonment for fourteen years for each offense. This appeal followed.

## MOTION TO SUPPRESS

In his sole issue, Appellant argues that the trial court erred in refusing to suppress Exhibit 3. Specifically, Appellant argues that Thornhill exceeded the scope of Appellant's consent when he accessed Appellant's photos on his cellular telephone.

### Standard of Review

We review a trial court's ruling on a motion to suppress evidence under a bifurcated standard of review. *See Amador v. State*, 221 S.W.3d 666, 673 (Tex. Crim. App. 2007); *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997). In reviewing the trial court's decision, we do not engage in our own factual review. *See Romero v. State*, 800 S.W.2d 539, 543 (Tex. Crim. App. 1990); *Best v. State*, 118 S.W.3d 857, 861 (Tex. App.–Fort Worth 2003, no pet.). The trial judge is the sole trier of fact and judge of the credibility of the witnesses and the weight to be given their testimony. *Wiede v. State*, 214 S.W.3d 17, 24–25 (Tex. Crim. App. 2007); *State v. Ross*, 32 S.W.3d 853, 855 (Tex. Crim. App. 2000), *modified on other grounds*, *State v. Cullen*, 195 S.W.3d 696 (Tex. Crim. App. 2006). Therefore, we give almost total deference to the trial court's rulings on (1) questions of historical fact, even if the trial court's determination of those facts was not based on an evaluation of credibility and demeanor, and (2) application of law to fact questions that turn on an evaluation of credibility and demeanor. *See Amador*, 221 S.W.3d at 673; *Montanez v. State*, 195 S.W.3d 101, 108–09 (Tex. Crim. App. 2006); *Johnson v. State*, 68 S.W.3d 644, 652–53 (Tex. Crim. App. 2002). But when application of law to fact questions do not turn on the credibility and demeanor of the witnesses, we review the trial court's rulings on those questions de novo. *See Amador*, 221 S.W.3d at 673; *Estrada v. State*, 154 S.W.3d 604, 607 (Tex. Crim. App. 2005); *Johnson*, 68 S.W.3d at 652–53.

In other words, when reviewing the trial court's ruling on a motion to suppress, we must view the evidence in the light most favorable to the trial court's ruling. *See Wiede*, 214 S.W.3d at 24;

***State v. Kelly***, 204 S.W.3d 808, 818 (Tex. Crim. App. 2006). When the record is silent on the reasons for the trial court's ruling, or when there are no explicit fact findings and neither party timely requested findings and conclusions from the trial court, we imply the necessary fact findings that would support the trial court's ruling if the evidence, viewed in the light most favorable to the trial court's ruling, supports those findings. *See **Kelly***, 204 S.W.3d at 819; *see **Amador***, 221 S.W.3d at 673; ***Wiede***, 214 S.W.3d at 25. We then review de novo the trial court's legal ruling unless the implied fact findings supported by the record are also dispositive of the legal ruling. *See **Kelly***, 204 S.W.3d at 819.

## Scope of Consent

Consent to search is one of the well established exceptions to the constitutional requirements of both a warrant and probable cause. ***Carmouche v. State***, 10 S.W.3d 323, 331 (Tex. Crim. App. 2000) (citing ***Schneckloth v. Bustamonte***, 412 U.S. 218, 219, 93 S. Ct. 2041, 2043–44, 36 L. Ed. 2d 854 (1973)). To be valid, a consent to search must be positive and unequivocal and must not be the product of duress or coercion, either express or implied. *See **Allridge v. State***, 850 S.W.2d 471, 493 (Tex. Crim. App. 1991). The trial court must look at the totality of the circumstances surrounding the statement of consent in order to determine whether consent was given voluntarily. *See **Reasor v. State***, 12 S.W.3d 813, 818 (Tex. Crim. App. 2000). The federal constitution requires the state to prove voluntary consent by a preponderance of the evidence, but the Texas Constitution requires proof by clear and convincing evidence. *See **Carmouche***, 10 S.W.3d at 331.

Yet, even when an individual voluntarily consents to a search, an officer's authority to perform the search is not without limit. *See **May v. State***, 582 S.W.2d 848, 851 (Tex. Crim. App. [Panel Op.] 1979). The extent of the search is limited to the scope of the consent given. *See **Florida v. Jimeno***, 500 U.S. 248, 251, 111 S. Ct. 1801, 1803–04, 114 L. Ed. 2d 297 (1991); ***May***, 582 S.W.2d at 851. The standard for measuring the scope of a suspect's consent under the Fourth Amendment is that of objective reasonableness, i.e., what the typical reasonable person would have understood from the exchange between the officer and the suspect. *See **Jimeno***, 500 U.S. at 251, 111 S. Ct. at 1803–04; ***Simpson v. State***, 29 S.W.3d 324, 330 (Tex. App.–Houston [14th Dist.] 2000, pet. ref'd). The question is not to be determined on the basis of the subjective intentions of the consenting party or the subjective interpretation of the searching officer. ***United States v.***

*Mendoza-Gonzalez*, 318 F.3d 663, 667 (5th Cir.), *cert. denied*, 538 U.S. 1049, 123 S. Ct. 2114, 155 L. Ed. 2d 1091 (2003).

"If the consent to search is entirely open ended, a reasonable person would have no cause to believe that the search will be limited in some way." *Id.* at 670 (quoting *United States v. Snow*, 44 F.3d 133, 134–35 (2d Cir. 1995)). Thus, for example, when an officer specifically asks a suspect if he can search a vehicle for illegal contraband, and the suspect answers affirmatively, a reasonable person would construe the consent to extend to any area of the vehicle in which such objects could be concealed. *See, e.g., Simpson*, 29 S.W.3d at 330. Moreover, if an officer makes a general request to search and the individual consents, knowing that there are unlocked containers in the car, the individual should expressly limit his consent to the vehicle but not the containers or, at the very least, object when the officer begins to open the container. *See Mendoza-Gonzalez*, 318 F.3d at 667. The state has the burden of showing that the search was conducted within the scope of the consent received. *See Malone v. State*, 163 S.W.3d 785, 798 n.6 (Tex. App.–Texarkana 2005, pet. ref'd).

**Scope of Consent to Search Cellular Telephone**

In the case at hand, N.H.'s father called the police after having been informed that N.H. was observed lying in Appellant's bed. Rhodes and Thornhill went to Appellant's place of employment to interview him. During the course of the interview, the officers questioned Appellant concerning whether he had been calling N.H. on the telephone. Shortly thereafter, Thornhill asked Appellant if he could see Appellant's cellular telephone. Appellant responded by handing his cellular telephone to Thornhill. After Thornhill examined the calling information on the telephone, he pressed the "camera" button. As a result, he observed several photos stored in the phone's memory, one of which was a nude picture of fourteen year old N.H. After Thornhill observed this photograph, Appellant stated that he had taken the picture of N.H. at the Twelve Oaks Hotel in Tyler, Texas.[1]

Appellant cites *United States v. Finley*, 477 F.3d 250 (5th Cir. 2007) and *United States v. Park*, No. CR 05-375 SI, 2007 WL 1521573 (N.D. Cal. 2007), both of which pertain to the seizure of information contained on cellular telephones. In *Finley*, the court generally acknowledged that a person has a privacy interest in information contained in a cellular telephone. *See Finley*, 477 F.3d

---

[1] N.H. confirmed at trial that the photograph depicted her and was taken at the hotel.

at 259–60. In *Park*, the government conceded that the defendants had a reasonable expectation of privacy in their cellular phones. *See Park*, 2007 WL 1521573, at *5 n.3. However, neither court considered the issue of scope of consent. As a result, neither *Finley* nor *Park* is germane to the issue at hand.

We have reviewed the record as it pertains to Appellant's giving consent. The epicenter of our inquiry is Thornhill's request to Appellant that he be allowed to examine Appellant's cellular telephone and Appellant's nonverbal response of simply handing his cellular telephone to Thornhill. There is no indication from the record that would allow a reasonable person to conclude that Appellant intended to shape the confines of his forthcoming consent by the subject matter of the conversation between him and Thornhill in the moments preceding Appellant's relinquishment of his cellular telephone to Thornhill. Instead, it is reasonable to conclude that Appellant's surrender to Thornhill of his cellular telephone in response to Thornhill's open ended request implied Appellant's grant of equally unbridled consent for Thornhill to examine the phone and the information contained therein. *See, e.g.*, *Cannon v. State*, 29 F.3d 472, 477 (2d Cir.1994) (holding that defendant's answer to "go ahead" and look in car justified search of trunk). Moreover, Appellant's failure to object to Thornhill's continued search of his phone after bestowing on him such general consent to search was an indication that Thornhill's search was within the scope of Appellant's initial consent. *See id.*

In sum, the State was required to prove by clear and convincing evidence that Appellant's consent to a search of his cellular telephone was unequivocal; in other words, that Appellant's expression of consent was, viewed in the totality of the circumstances, capable of only one reasonable interpretation. *See Reasor*, 12 S.W.3d at 818; *Allridge*, 850 S.W.2d at 493. Having applied a deferential standard of review to the trial court's determination of historical facts, we conclude that a reasonable person could have interpreted Appellant's handing his cellular telephone to Thornhill in response to Thornhill's open ended request as an unlimited consent to examine the information contained therein. *See Mendoza-Gonzalez*, 318 F.3d at 667. Therefore, we hold that the trial court acted within its discretion by finding that the State proved by clear and convincing evidence that Thornhill's search of Appellant's cellular telephone was within the scope of Appellant's consent. Appellant's sole issue is overruled.

## DISPOSITION

Having overruled Appellant's sole issue, we ***affirm*** the trial court's judgment.

  SAM GRIFFITH  
Justice

Opinion delivered May 13, 2009.
*Panel consisted of Worthen, C.J., Griffith, J., and Hoyle, J.*

(PUBLISH)