PD-1452-16
COURT OF CRIMINAL APPEALS
AUSTIN, TEXAS
Transmitted 12/21/2016 3:49:22 PM
Accepted 12/22/2016 2:11:05 PM
ABEL ACOSTA
CLERK

# TEXAS COURT OF CRIMINAL APPEALS

## PD-_____-16

## *Natalie Ausbie Reynolds, Appellant*
## *v.*
## *State of Texas, Appellee*

**On Discretionary Review from the Sixth Court of Appeals**
**No. 06-15-00194-CR**

**On Appeal from the 354 Judicial District Court, Hunt County**
**No. 29263**

# Appellant's Motion to Extend Time to File Petition for Discretionary Review

**Michael Mowla**
**P.O. Box 868**
**Cedar Hill, TX 75106**
**Phone: 972-795-2401**
**Fax: 972-692-6636**
**michael@mowlalaw.com**
**Texas Bar No. 24048680**
**Attorney for Appellant**

FILED IN
COURT OF CRIMINAL APPEALS

December 22, 2016

ABEL ACOSTA, CLERK

**To the Honorable Judges of the Court of Criminal Appeals:**

Appellant moves for an extension of time of **30 days** to file a petition for discretionary review:

1.      On **November 30, 2016**, in *Reynolds v. State,* No. 06-15-00194-CR, 2016 Tex. App. LEXIS 12672 (Tex. App. Texarkana 2016) (designated for publication), the Court of Appeals affirmed Appellant's conviction. *See* attached.

2.      The petition for discretionary review is due on **December 30, 2016**.

3.      For good cause, Appellant asks for an extension of 30 days until **January 30, 2017** to file the petition for discretionary review.

4.      No previous extension to file the petition for discretionary review has been filed.

5.      Appellant relies on the following facts as good cause: attorney for Appellant just completed and filed the PDR in *Blount v. State*, PD-1270-16. And, he continues to work on a federal writ of habeas corpus death penalty case in *Green v. Director*, 3:15-CV-02197-M-BH, the initial petition being filed in the Northern District of Texas on June 13, 2016, but additional pleadings will be filed soon.

6.      Further, attorney for Appellant has the following briefs, petitions for discretionary review, or other pleadings due soon:

- Application for Writ of Habeas Corpus in a death penalty case under Tex. Code Crim. App. Art. 11.071 in *Ex parte Thomas*, F86-85539, in the 194th Judicial District Court, due on January 27, 2017.

- Supplemental Brief in *State v. Hill III*, 05-13-00421-CR, Fifth Court of Appeals, due January 19, 2007.

- Brief in the review of a denial of an Article 46.05/*Panetti*/*Ford* motion in a death penalty case, *Battaglia v. State*, AP-77,069, due in the Texas Court of Criminal Appeals on January 30, 2017.

- Petition for Writ of Habeas Corpus in a death penalty case under 28 U.S.C. § 2254 in *Hummel v. Davis*, No. 4-16-CV-0133, USDC-NDTX, due February 9, 2017

7.      This Motion is not filed for purposes of delay, but so that justice may

be served.

## Prayer

Appellant prays that this Court grant this motion for an extension of time to

file the petition for discretionary review.

Respectfully submitted,

Michael Mowla
P.O. Box 868
Cedar Hill, TX 75106
Phone: 972-795-2401
Fax: 972-692-6636
michael@mowlalaw.com
Texas Bar No. 24048680
Attorney for Appellant

**/s/ Michael Mowla**
Michael Mowla

3

## Certificate of Service

I certify that on December 21, 2016, a true and correct copy of this document was served on Hunt County District Attorney Nobie Walker and Assistant District Attorney Steve Lilly, by Texas efile to nwalker@huntcounty.net, slilley@huntcounty.net; and on Lisa McMinn, the State Prosecuting Attorney, by Texas efile to Lisa.McMinn@spa.texas.gov, and John Messinger, Assistant State Prosecuting Attorney, by Texas efile to john.messinger@spa.state.tx.us. *See* Tex. Rule App. Proc. 9.5 (2016) and Tex. Rule App. Proc. 68.11 (2016).

**/s/ Michael Mowla**
Michael Mowla


# *Reynolds v. State*

Court of Appeals of Texas, Sixth District, Texarkana

September 28, 2016, Submitted; November 30, 2016, Decided

No. 06-15-00194-CR

**Reporter**
2016 Tex. App. LEXIS 12672 *

NATALIE AUSBIE REYNOLDS, Appellant v. THE STATE OF TEXAS, Appellee

**Notice:** PUBLISH.

**Prior History:** **[*1]** On Appeal from the 354th District Court, Hunt County, Texas. Trial Court No. 29263.

*Ross v. State, 2016 Tex. App. LEXIS 12673 (Tex. App. Texarkana, Nov. 30, 2016)*

## Core Terms

cell phone, phone, searched, placement, tortious, contends, fact-finder, court order, seized, legally sufficient, evidence supports, arrest, reasonable expectation of privacy, beyond a reasonable doubt, expectation of privacy, taking possession, contents, seizure, oppression, commission of the offense, trial court's judgment, time of the incident, trial court, investigator, immunity, drugs, void, exigent circumstances, contact information, court of appeals

## Case Summary

### Overview
HOLDINGS: [1]-The evidence showed that defendant was involved in taking the minor's cell phone, refusing to return it to her on her request, and then searching through it, either as a principal or as a party to another's actions; [2]-The evidence was such that defendant seized the minor's cell phone in an effort to locate evidence of the minor's admitted drug use or to locate what defendant believed to be contact information for drug dealers; [3]-The minor had a reasonable expectation of privacy in her cell phone and defendant's actions were not authorized as the cell phone was not seized pursuant to an arrest, and there was no evidence of any warrant, court order, or consent to seize and search the cell phone; [4]-Defendant intentionally subjected the minor to an unlawful search or seizure that she knew was tortious and there was no justification or privilege to excuse her actions.

### Outcome
Judgment affirmed.

## LexisNexis® Headnotes

Criminal Law & Procedure > ... > Standards of Review > Substantial Evidence > Sufficiency of Evidence

Evidence > Admissibility > Circumstantial & Direct Evidence

*HN1* In evaluating legal sufficiency of the evidence the appellate court must review all the evidence in the light most favorable to the jury's verdict to determine whether any rational jury could have found, beyond a reasonable doubt, that defendant was guilty of the offense. The appellate court examines legal sufficiency under the direction of the Brooks opinion, while giving deference to the responsibility of the fact-finder to fairly resolve conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. The appellate court considers events occurring before, during, and after the commission of the offense and may rely on actions of the defendant which show an understanding and common design to the prohibited act. The appellate court will affirm the trial court's judgment as long as the cumulative force of all the incriminating circumstances is sufficient to support the conviction. Circumstantial evidence and direct evidence are equally probative in establishing the guilt of the accused, and guilt may be established by circumstantial evidence only.

Criminal Law & Procedure > ... > Standards of Review > Substantial Evidence > Sufficiency of Evidence

*HN2* Legal sufficiency of the evidence is measured by the elements of the offense as defined by a hypothetically correct jury charge. The hypothetically correct jury charge sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried.

Criminal Law & Procedure > Criminal Offenses > Abuse of Public Office

*HN3* *Tex. Penal Code Ann. § 39.03(a)(1)* sets out the elements of the offense of official oppression: (a) A public servant acting under color of his office or employment commits an offense if he:(1) intentionally subjects another to mistreatment or to arrest, detention, search, seizure, dispossession, assessment, or lien that he knows is unlawful;(2) intentionally denies or impedes another in the exercise or enjoyment of any right, privilege, power, or immunity, knowing his conduct is unlawful; or ( 3) intentionally subjects another to sexual harassment. (b) For purposes of this section, a public servant acts under color of his office or employment if he acts or purports to act in an official capacity or takes advantage of such actual or purported capacity. (c) In this section, "sexual harassment" means unwelcome sexual advances, requests for sexual favors, or other verbal or physical conduct of a sexual nature, submission to which is made a term or condition of a person's exercise or enjoyment of any right, privilege, power, or immunity, either explicitly or implicitly.

Criminal Law & Procedure > Accessories > Aiding & Abetting

*HN4* A person is criminally responsible as a party to an offense if the offense is committed by his own conduct, by the conduct of another for which he is criminally responsible, or both, *Tex. Penal Code Ann. § 7.01(a) (2011)*. In addition, a person is criminally responsible for the conduct of another if, while acting with intent to promote or assist the commission of the offense, he solicits, encourages, directs, aids, or attempts to aid the other person to commit the offense, *Tex. Penal Code Ann. § 7.02(a)(2) (2011)*. Each party to an offense may be charged with commission of the offense, *Tex. Penal Code Ann. § 7.01(b)*

*(2011)*. Thus, under the law of parties, the State is able to enlarge a defendant's criminal responsibility to include acts in which she may not have been the principal actor. The appellate court's role is to determine whether legally sufficient evidence is in this record to support this finding.

Criminal Law & Procedure > ... > Standards of Review > Deferential Review > Credibility & Demeanor Determinations

*HN5* As the fact-finder, the trial court is the judge of the credibility of the witnesses and is free to believe or disbelieve all or part of any witness's testimony. Appellate courts do not engage in a second evaluation of the weight and credibility of the evidence, but ensure only that the fact-finder reached a rational decision.

Criminal Law & Procedure > Criminal Offenses > Acts & Mental States

*HN6* The Texas Penal Code defines "unlawful" to mean criminal or tortious or both and includes what would be criminal or tortious but for a defense not amounting to justification or privilege, *Tex. Penal Code Ann. § 1.07(a)(48)*.

Family Law > Family Protection & Welfare > Children > Services

*HN7* *Tex. Fam. Code Ann. § 262.104(a)(1) (Supp. 2016)*, entitled "Taking Possession of a Child in Emergency Without a Court Order," states, (a) If there is no time to obtain a temporary order, temporary restraining order, or attachment under *Section 262.102(a)* before taking possession of a child consistent with the health and safety of that child, an authorized representative of the Department of Family and Protective Services, a law enforcement officer, or a juvenile probation officer may take possession of a child without a court order under the following conditions, only. (1) on personal knowledge of facts that would lead a person of ordinary prudence and caution to believe that there is an immediate danger to the physical health or safety of the child.

Family Law > Family Protection & Welfare > Children > Services

*HN8* *Tex. Fam. Code Ann. § 262.104(a)(1) (Supp. 2016)* is clear that the Department of Family and Protective Services may take possession of a child when an emergency situation exists.

Criminal Law & Procedure > Search & Seizure > Expectation of Privacy

Criminal Law & Procedure > Search & Seizure > Seizure of Things

*HN9* The *Fourth Amendment* states, The right of the people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures shall not be violated, *U.S. Const. amend. IV*. The *Fourth Amendment's* guarantee of a person's right to be free from warrantless searches by a government official applies to a Department of Family and Protective Services' caseworker's investigation. Subject to a few well-delineated exceptions, under the *Fourth* and *Fourteenth Amendments to the United States Constitution*, a search conducted without a warrant issued with probable cause is deemed per se unreasonable. There are well-known exceptions to the warrant requirement, including searches conducted pursuant to consent or due to exigent circumstances. However, an individual can complain about the lawfulness of a search or seizure only if he or she has a reasonable expectation of privacy in the item to be searched.

Civil Rights Law > Protection of Rights > Section 1983 Actions > Scope

*HN10* In a civil rights action under *42 U.S.C.S. § 1983*, personal involvement in a constitutional deprivation is actionable, and a supervisor of a direct actor may be held liable if he or she affirmatively participated in the acts giving rise to the constitutional deprivation or if the supervisor's wrongful conduct is causally connected to the constitutional violation.

Criminal Law & Procedure > Accessories > Aiding & Abetting

*HN11* A reasonable belief is one that would be held by an ordinary and prudent person in the same circumstances as the actor, *Tex. Penal Code Ann. § 1.07(a)(42) (Supp. 2016)*.

Criminal Law & Procedure > Accessories > Aiding & Abetting

*HN12* The concept of an individual having a fair warning that his or her conduct is unlawful is based on due process and founded on the principle that no person should be held criminally liable for conduct which he could not reasonably understand to be proscribed. Criminal liability may be imposed under the statute for deprivation of a constitutional right if, but only if, in the light of pre-existing law the unlawfulness under the Constitution is apparent.

**Judges:** Before Morriss, C.J., Moseley and Burgess, JJ. Opinion by Chief Justice Morriss.

**Opinion by:** Josh R. Morriss, III

# Opinion

In June 2012, it was reported to the Greenville, Texas, office of the Texas Department of Family and Protective Services (the Department) that a fifteen-year-old girl, A.K.,[1] had run away from home, had troubling activities and associations—using illegal drugs and living with non-family adult males—and needed the Department's assistance.[2] On June 13, 2012, the Hunt County Sheriff's Department located A.K. at the home of a twenty-three-year-old male and transported her to the Hunt County Juvenile Detention Center. On A.K.'s arrival, the center's personnel took A.K.'s personal effects, including a bracelet, a ring, and her cell phone. The subsequent actions of Natalie Ausbie Reynolds, a supervisor for the Department, and Rebekah Thonginh Ross, one of the Department investigators, regarding the seizure and search of A.K.'s cell phone are the basis for this case in which Reynolds has been convicted of official oppression.[3]

On appeal, Reynolds challenges the legal sufficiency of the evidence to support her conviction. We affirm the judgment of the trial court, because (1) legally sufficient evidence supports the finding that Reynolds,

---

[1] We will refer to the child by initials in order to protect her identity. *See Tex. R. App. P. 9.10*.

[2] On June 13, **[*2]** 2012, the Department received a telephone call from Brenda Robertson, A.K.'s guardian, informing the Department that A.K. ran away from home two weeks before and that she needed the Department's assistance. During the call, Robertson explained that A.K. had been using methamphetamine and marihuana. A.K. had been with Robertson since July 2011, because A.K.'s mother, H.K., did not want to care for her. In fact, A.K.'s mother wanted to terminate her parental rights to A.K. and A.K.'s father was incarcerated for various offenses.

[3] Following her bench trial, Reynolds was sentenced to one year in county jail, but the sentence was suspended, and she was placed on community supervision for a period of two years, conditioned on Reynolds spending thirty days in county jail.

either as a primary actor or as a party with Ross, intentionally seized and searched A.K.'s cell phone; (2) legally sufficient evidence supports the finding that the actions were tortious; and (3) legally sufficient **[\*3]** evidence supports the finding that Reynolds knew the actions were tortious.

In a single point of error, Reynolds contends that the State failed to present sufficient evidence to support a verdict of guilt.[4] Though there is only one point of error, Reynolds argues that point in three ways. We address each in turn.

*HN1* In evaluating legal sufficiency of the evidence in **[\*4]** the face of Reynolds' three ways of attacking it, we must review all the evidence in the light most favorable to the jury's verdict to determine whether any rational jury could have found, beyond a reasonable doubt, that Reynolds was guilty of the offense of official oppression. *See Brooks v. State, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010)* (plurality op.) (citing *Jackson v. Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979))*; *Hartsfield v. State, 305 S.W.3d 859, 863 (Tex. App.—Texarkana 2010, pet. ref'd)* (citing *Clayton v. State, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007))*. We examine legal sufficiency under the direction of the *Brooks* opinion, while giving deference to the responsibility of the fact-finder "to fairly resolve conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Hooper v. State, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007)* (citing *Jackson, 443 U.S. at 318-19*). We consider "events occurring before, during[,] and after the commission of the offense and may rely on actions of the defendant which show an understanding and common design to the prohibited act." *Id.* We will affirm the trial court's judgment "as long as the cumulative force of all the incriminating circumstances is sufficient to support the conviction." *Id.* Circumstantial evidence and direct evidence are equally probative in establishing the guilt of the accused, and guilt may be established by circumstantial evidence only. *Id.* (citing *Guevara v. State, 152 S.W.3d 45, 49 (Tex. Crim. App. 2004))*.

*HN2* Legal sufficiency of the evidence is measured by **[\*5]** the elements of the offense as defined by a hypothetically correct jury charge. *Malik v. State, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997)*. The hypothetically correct jury charge "sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried." *Id.*

The State charged Reynolds with the offense of official oppression.[5] Pursuant to the indictment against her, the State was required to prove, beyond a reasonable doubt, that, on or about June 14, 2012,

---

[4] In addition, Reynold's contends that, not only is the evidence insufficient to support the trial court's judgment of guilt, but that the judgment is likely "void" because the record reflects there is *no* evidence to support the conviction. A trial court's judgment is void only in very rare situations in which its judgment is accorded no respect due to a complete lack of power to render the judgment in question. *Nix v. State, 65 S.W.3d 664, 668 (Tex. Crim. App. 2001)*. A void judgment is considered a "nullity" and may be attacked at any time. *Id.* A judgment is void only in rare circumstances, usually due to lack of jurisdiction. *Id.* However, a trial court's judgment of conviction for a crime is void when "the record reflects that there is no evidence to support the conviction." *Id.* (citing *Wolfe v. State, 560 S.W.2d 686, 688 (Tex. Crim. App. 1978))*. For the reasons set out in this opinion, the trial court's judgment in this case is not void.

[5] *HN3* The statute sets out the elements of the offense of official oppression:

(a) A public servant acting under color of his office or employment commits an offense if he:

(1) intentionally subjects another to mistreatment or to arrest, detention, search, seizure, dispossession, assessment, or lien that he knows is unlawful;

Reynolds, either individually or acting as a party with Ross, intentionally subjected A.K. to an unlawful search and/or seizure while acting as an investigator for the Department,[6] knowing that her actions were unlawful at the time. *See Tex. Penal Code Ann. § 39.03(a)(1).*

*(1) Legally Sufficient Evidence Supports the Finding that Reynolds, Either as a Primary Actor or as a Party with Ross, Intentionally Seized and Searched A.K.'s Cell Phone*

Reynolds contends that the State failed to provide legally sufficient evidence that she individually, or acting as a party with Ross, searched or seized A.K.'s cell phone. *HN4* "A person is criminally responsible as a party to an offense if the offense [*7] is committed by his own conduct, by the conduct of another for which he is criminally responsible, or both." *Tex. Penal Code Ann. § 7.01(a)* (West 2011). In addition, a person is criminally responsible for the conduct of another if, while "acting with intent to promote or assist the commission of the offense, he solicits, encourages, directs, aids, or attempts to aid the other person to commit the offense." *Tex. Penal Code Ann. § 7.02(a)(2)* (West 2011). "Each party to an offense may be charged with commission of the offense." *Tex. Penal Code Ann. § 7.01(b)* (West 2011). Thus, under the law of parties, the State is able to enlarge a defendant's criminal responsibility to include acts in which she may not have been the principal actor. *Goff v. State, 931 S.W.2d 537, 544 (Tex. Crim. App. 1996)*. Our role is to determine whether legally sufficient evidence is in this record to support this finding. We conclude that there is such evidence.

Kenny Stillwagoner, formerly with the Department, testified that he believed Reynolds, Ross, or both of them, took possession of A.K.'s cell phone without her consent. He also testified that Reynolds remained in possession of the cell phone because she believed it contained contact information for drug dealers. In addition, Edie Diane Fletcher, also formerly with the Department, testified that, when she [*8] contacted Reynolds about the situation regarding A.K.'s cell phone, Reynolds explained to her that she could not return the phone to A.K. because she believed A.K.'s cell phone contained contact information relating to drug dealers and that "they" needed to "finish their investigation." A.K. testified that she became very upset when Ross and Reynolds refused to return her cell phone and that both Ross and Reynolds looked through her cell phone. Further, A.K. testified that Ross and Reynolds retrieved information from her cell phone relating to Steve Lamb and Michael Watts, and there was no evidence presented that either of these men was considered as a potential placement option for A.K. In fact, A.K. had little, if any, information as to why she was questioned about her relationship to either man.

---

(2) intentionally denies or impedes another in the exercise or [*6] enjoyment of any right, privilege, power, or immunity, knowing his conduct is unlawful; or

(3) intentionally subjects another to sexual harassment.

(b) For purposes of this section, a public servant acts under color of his office or employment if he acts or purports to act in an official capacity or takes advantage of such actual or purported capacity.

(c) In this section, "sexual harassment" means unwelcome sexual advances, requests for sexual favors, or other verbal or physical conduct of a sexual nature, submission to which is made a term or condition of a person's exercise or enjoyment of any right, privilege, power, or immunity, either explicitly or implicitly.

*Tex. Penal Code Ann. § 39.03* (West Supp. 2016).

[6] Reynolds does not claim that she was acting in any other capacity than as an employee of the State.

*HN5* As the fact-finder, the trial court is the judge of the credibility of the witnesses and is free to believe or disbelieve all or part of any witness's testimony. *Jones v. State, 984 S.W.2d 254, 257 (Tex. Crim. App. 1998)*. Appellate courts do not engage in a second evaluation of the weight and credibility of the evidence, but ensure only that the fact-finder reached a rational decision. *Muniz v. State, 851 S.W.2d 238, 246 (Tex. Crim. App. 1993)*. Here, the trial court chose to believe that the evidence showed **[*9]** that Reynolds was involved in taking A.K.'s cell phone, refusing to return it to her on her request, and then searching through it, either as a principal actor or as a party to Ross' actions. There is sufficient evidence to support the trial court's finding.

*(2) Legally Sufficient Evidence Supports the Finding that the Actions Were Tortious*

Reynolds also contends that there was insufficient evidence to show that her actions were unlawful. *HN6* The Texas Penal Code defines "unlawful" to mean "criminal or tortious or both and includes what would be criminal or tortious but for a defense not amounting to justification or privilege."[7] *Tex. Penal Code Ann. § 1.07(a)(48)* (West Supp. 2016). Thus, as to this element, the State must provide sufficient evidence that the search or seizure of A.K.'s cell phone was criminal or tortious. *See id.* We have been presented with no claim that the search itself was criminal, so we will focus on whether evidence supports a finding that it was tortious.

Reynolds maintains that, after the detention center placed A.K. with the Department, all of her actions were within the Department's guidelines and were therefore lawful. Although the Department did not have court-ordered temporary custody of A.K. until the following day,[8] Reynolds contends that the Department was acting as A.K.'s *de facto* managing conservator or that it was acting *in loco parentis* "because there **[*11]** clearly was an emergency regarding A.K.'s physical and emotional well-being," and it was imperative that the Department locate a temporary placement home for A.K.

*HN7* *Section 262.104(a)(1) of the Texas Family Code*, entitled "Taking Possession of a Child in Emergency Without a Court Order," states,

---

[7] In its brief, the State contends that the drafters of the official oppression statute intended the word "unlawful" to be defined as something along the lines of "not authorized by law." In support of its argument, the State points to the State Bar **[*10]** Committee's meeting during 1970, when the Committee was tasked with revising the Texas Penal Code. The State contends the minutes of the meeting amount to evidence that the committee was not using the term "unlawful" in the official oppression statute to mean "criminal or tortious or both." The State also cites *Palacios*, stating, "The only court of appeals to directly opine on this question *used the statutory definition*, though it is unclear whether the historical record was brought to the court's attention." *See Palacios v. State, No. 13-11-00254-CR, 2014 Tex. App. LEXIS 8313, 2014 WL 3778170, at *3 (Tex. App.—Corpus Christi July 31, 2014, no pet.)* (mem. op., not designated for publication) (emphasis added). We find no compelling reason to conclude that the word "unlawful" means anything other than the definition it has been given in the Texas Penal Code. *See Tex. Penal Code Ann. § 1.07(a)(48)*.

[8] The parties agree that there was no court order issued at the time of the incident at issue and that a court order was entered the following day giving the Department, among other things, "the right to have physical possession [of A.K.] and to direct the moral and religious training of [A.K.]" as well as "the duty of care, control, protection, and reasonable discipline of [A.K.]." *See Tex. Fam. Code Ann. § 153.371* (West Supp. 2016). Reynolds contends that, based on the duties and responsibilities contained in the trial court's order, it would be reasonable to believe that the Department had the right to control A.K.'s possession of her cell phone. We decline to make a finding as to whether Reynolds' actions of remaining in possession of A.K.'s cell phone or searching through its contents for the purpose of finding a placement option for A.K., falls within the delineated rights and responsibilities given to the Department by virtue of the forthcoming court order because (1) there was no court order in effect at the time the incident at issue took place, **[*12]** and (2) as explained below, there is sufficient evidence by which the trial court could have found that Reynolds' motives were not based on a desire to find A.K. a placement home, but rather, to find information related to A.K.'s use of drugs or contact information for alleged drug dealers.

(a) If there is no time to obtain a temporary order, temporary restraining order, or attachment under *Section 262.102(a)* before taking possession of a child consistent with the health and safety of that child, an authorized representative of the Department of Family and Protective Services, a law enforcement officer, or a juvenile probation officer may take possession of a child without a court order under the following conditions, only.

(1) on personal knowledge of facts that would lead a person of ordinary prudence and caution to believe that there is an immediate danger to the physical health or safety of the child.

*Tex. Fam. Code Ann. § 262.104* (West Supp. 2016). Reynolds contends that exigent circumstances existed,

> because A.K.: (1) ran away from her guardian, (2) was picked up by the police from the home of an unrelated male, (3) had no place to go but into **[*13]** [the Department's] custody due to her bad behavior and lying when she does not get what she wants, (4) wanted to live with and date adult men, (5) wanted to use and peddle dangerous drugs, (6) at the time of the purported "search" [was] legally in the care and custody of [the Department], and (7) whose cell phone would have been seized regardless that night because the placement home to which the child was taken did not allow cell phones.

The State maintains that Reynolds, as a representative of the Department, cannot claim that she acted *in loco parentis* or as A.K.'s *de facto* parent because she was "not acting as a 'parent' when she was searching [A.K.'s] phone. Instead, she was clearly acting as an investigator attempting to build a case for either herself or law enforcement." The State points to Reynolds' affidavit, arguing that it "reads like a veteran police detective interrogating a criminal suspect." For example, Reynolds states in her affidavit that A.K. "admit[ed]" to failing two drug tests. Reynolds confronted A.K. about her possession of drug scales and paraphernalia, she asked A.K. whether she sold drugs and whether two people that A.K. had been seen with sold drugs. The State also **[*14]** emphasizes that Ross operated A.K.'s phone after a placement facility for A.K. had already been found and that Reynolds told Fletcher that A.K.'s phone had to remain at the office because she intended to look through the phone for "drug evidence." The State argues, pursuant to this evidence, that when Reynolds seized A.K.'s phone, she was not doing so in order to find a family placement for A.K.; instead, she was unlawfully searching her cell phone for evidence of drug use.

*HN8* *Section 262.104(a)(1)* is clear that the Department may take possession of a child when an emergency situation exists. *See* *Tex. Fam. Code Ann. § 262.104*. Here, the record shows that A.K.'s current living situation was less than suitable for a person of her age and that the Department had been unable to find an appropriate caregiver for A.K., therefore, it is reasonable to believe that the Department was within its authority to take possession of A.K. for the sole purpose of finding a safe place for her to reside until a court order had been issued. However, the evidence does not compel the fact-finder to believe Reynolds' claim that she took possession of A.K.'s cell phone in an attempt to locate an acceptable placement for A.K.[9]

---

[9] We need not decide whether Reynolds **[*15]** had the authority to search through A.K.'s cell phone without the benefit of a court order in an effort to find a placement home for A.K., because the fact-finder had evidence that would allow the conclusion that Reynolds did not want A.K.'s cell phone for that purpose, but to search for evidence of drug activity.

The fact-finder could conclude that, had Reynolds needed access to A.K.'s cell phone to find a placement home, there would have been no need for the Department to retain the phone after a temporary placement facility had been found. And it is difficult to envision a lawful reason for the Department to retain A.K.'s phone indefinitely. Contrary to her position, the evidence supports a finding that Reynolds seized A.K.'s cell phone in an effort to locate evidence of A.K.'s admitted drug use or to locate what Reynolds believed to be contact information for drug dealers. In either event, the situation was not of such urgency that it prevented Reynolds from waiting for the trial court's intervention the following day or from seeking assistance from appropriate law enforcement personnel if, in fact, there was evidence of illegal activity on A.K.'s cell phone. Under the evidence **[\*16]** in this record, the fact-finder could have rationally found that Reynolds was not acting *in loco parentis* or as a *de facto* parent.

Next, we must determine if there existed any lawful reason for Reynolds, investigating for the Department, to search or seize A.K.'s cell phone. *HN9* The *Fourth Amendment* states, "The right of the people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures shall not be violated." *U.S. CONST. amend. IV*. The *Fourth Amendment's* guarantee of a person's right to be free from warrantless searches by a government official applies to a Department caseworker's investigation. *Gates v. Tex. Dep't of Protective & Regulatory Servs., 537 F.3d 404, 419-20 (5th Cir. 2008)*; *Wooley v. City of Baton Rouge, 211 F.3d 913, 919 (5th Cir. 2000)* (stating that *Fourth Amendment* standards apply in both civil and criminal contexts). Subject to a few well-delineated exceptions, under the *Fourth* and *Fourteenth Amendments to the United States Constitution*, a search conducted without a warrant issued with probable cause is deemed per se unreasonable. *Schneckloth v. Bustamonte, 412 U.S. 218, 219, 93 S. Ct. 2041, 36 L. Ed. 2d 854 (1973)*. There are well-known exceptions to the warrant requirement, including searches conducted pursuant to consent or due to exigent circumstances.[10] *State v. Villarreal, 475 S.W.3d 784, 791-92 (Tex. Crim. App. 2014)*. However, an individual can complain about the lawfulness of a search or seizure only if he or she has a reasonable expectation of privacy in the item to be searched. *State v. Betts, 397 S.W.3d 198, 203-04 (Tex. Crim. App. 2013)*.

Therefore, we must first consider whether A.K. had a reasonable expectation of privacy in her cell phone while she was being temporarily held by the Department.

> The litmus [test] for determining the existence of a legitimate expectation of privacy as to a particular [person] is twofold: first, did [she] exhibit by [her] conduct an actual (subjective) expectation of privacy[;][11] and second, if [she] did, was that subjective expectation one that society is prepared to recognize as reasonable.[12]

---

[10] Here, the evidence is clear that (1) no warrant existed at the time **[\*17]** of the incident and (2) A.K. did not consent for either Reynolds or Ross to remain in possession of her cell phone or to search its contents.

[11] Certainly, A.K.'s behavior evidenced the fact that she had a subjective expectation of privacy. As A.K. testified, "[She] threw a big ol' fit about it."

[12] To make this determination, courts have looked at the following factors: (1) whether the individual had a property or possessory **[\*18]** interest in the place or object searched; (2) whether the defendant's presence in or on the place searched was legitimate; (3) whether the defendant has the right to exclude others from the place or object; (4) whether the individual took normal precautions, prior to the search, which are customarily taken to protect privacy in the place or object; (5) whether the place or object searched was put to a private use; and (6) whether his privacy claim fits over historical ideas about privacy. *Granados v. State, 85 S.W.3d 217, 223 (Tex. Crim. App. 2002)*. Under the facts of this case, the majority of these factors, if not all of them, fall in favor of A.K. reasonably having a subjective expectation of privacy in her cell phone, and her subjective expectation of privacy was one that society would reasonably recognize at the time of the incident.

*Chapa v. State, 729 S.W.2d 723, 727 (Tex. Crim. App. 1987)*. In 2007, the United States Fifth Circuit Court of Appeals in *Finley* addressed this issue, holding that an individual has an expectation of privacy in his or her cell phone. *United States v. Finley, 477 F.3d 250 (5th Cir. 2007)*.[13] Since that time, both state and federal courts have consistently adhered to the same line of reasoning. *See United States v. Zavala, 541 F.3d 562 (5th Cir. 2008)*;[14] *Lemons v. State, 298 S.W.3d 658, 661 (Tex. App.—Tyler 2009, pets. ref'd)*. [15]

Based on precedent and this record, we conclude that A.K. had a reasonable expectation of privacy in her cell phone. Reynolds seems to claim, however, that, because A.K. had been known to use drugs and was allegedly having inappropriate **[*22]** relationships with adult men, that somehow changed A.K.'s expectation of privacy in her phone. Based on A.K.'s alleged behavior and lack of any known placement options at the time, Reynolds contends that she had an urgent responsibility to find A.K. a place to reside until the Department took custody of her and that she believed A.K.'s phone contained useful information that could assist her in that endeavor. Thus, her duty to find A.K. a place to reside overnight, until a court

---

[13] In *United States v. Finley*, law enforcement officers arrested Finley during a traffic stop after a passenger in his van sold methamphetamine to an informant. Pursuant to his arrest, the officers found a cell phone in Finley's pocket. The officers took Finley, along with his passenger, to the passenger's house, where other officers were conducting a search of the residence. While Finley was being questioned **[*19]** there, officers examined the call records and text messages on Finley's phone, finding evidence that appeared to be related to narcotics use and drug trafficking. *Finley, 477 F.3d at 254*. Some of the incriminating text messages were later admitted against Finley during trial. *Id.* Finley filed a motion to suppress, which the trial court denied. The Fifth Circuit Court of Appeals held:

> The district court did not clearly err in finding that Finley had a right to exclude others from using the phone. Further, the government stipulated that Finley's employer permitted him to use the phone for his own personal purposes. And we see no error in the district court's finding that Finley took normal precautions to maintain his privacy in the phone, despite the government's protestation that the phone was not password protected. In these circumstances, we conclude that Finley had a reasonable expectation of privacy in the call records and text messages on the cell phone. . . .

*Id. at 259*. However, because the search of Finley's phone was made incident to his arrest, the appellate court affirmed the trial court's decision not to suppress the text messages. *Id. at 259-60*.

[14] In reversing the trial court's denial of Zavala's motion to suppress testimony **[*20]** of a Drug Enforcement Administration (DEA) agent regarding information obtained from a search of Zavala's cell phones after his vehicle was stopped by police, the Fifth Circuit Court of Appeals found that the DEA agents had a reasonable suspicion of drug-trafficking activity that was sufficient to justify the initial investigative stop, but that the suspicion did not rise to the level of probable cause to arrest before Zavala's cell phones were searched, such that the searches were not justified under an "incident to arrest theory." *Zavala, 541 F.3d at 575*. The court reasoned,

> Unlike a driver's license and vehicle registration, which are typically issued by a governmental entity, cell phones contain a wealth of private information, including emails, text messages, call histories, address books, and subscriber numbers. Zavala had a reasonable expectation of privacy regarding this information. A cell phone is similar to a personal computer that is carried on one's person; *Finley* indicates that mere possession of a cell phone gives rise to a reasonable expectation of privacy regarding its contents. A police officer's license check during a traffic stop is "within the scope of investigation attendant to the traffic **[*21]** stop" and is not triggered by any particularized suspicion that the check will produce evidence of a crime. In this case, Moreman's search of Zavala's cell phone was "general rummaging in order to discover incriminating evidence."

*Id. at 577* (citations omitted).

[15] In *Lemons*, the Tyler Court of Appeals recognized that an individual has a reasonable expectation of privacy in his or her cell phone; however, the appellate court affirmed the trial court's order denying the appellant's motion to suppress, finding Lemon had given the officer consent to search his cell phone by handing the officer his phone in response to the officer's request. "There is no indication from the record that would allow a reasonable person to conclude that Appellant intended to shape the confines of his forthcoming consent by the subject matter of the conversation between Appellant and [the officer] in the moments preceding Appellant's relinquishment of his cellular telephone to [the officer]." *Lemons, 298 S.W.3d at 662*.

could intervene, amounted to exigent circumstances warranting an intrusion into the contents of A.K.'s cell phone. We need not find whether the proffered exigent circumstances warrant such an intrusion because there is evidence in this record that Reynolds' motive was contrary to her claim, allowing the fact-finder to find this against Reynolds' as well. For instance, (1) a placement facility had been found, yet Reynolds demanded that A.K.'s cell phone stay in the Department's possession until she arrived the following morning; (2) there was testimony that Reynolds' motive for taking possession of the cell phone was her desire to look through its contents for evidence of A.K.'s drug use or for contact information **[\*23]** relating to alleged drug dealers; and (3) A.K.'s cell phone was never returned to her. Had Reynolds wanted the cell phone for the purpose she claims, she would have had no reason to continue in possession of the phone once a placement facility for A.K. had been located.

A.K.'s cell phone was not seized pursuant to an arrest, and there is no evidence of any warrant, court order, or consent to seize or search A.K.'s cell phone. Reynolds' claim of exigent circumstances is not compelled by the evidence. For these reasons, we find that Reynolds' actions were not authorized.

We must take one further step to determine whether the evidence supports a finding, beyond a reasonable doubt, that Reynolds' actions were also tortious.

*HN10* In a civil rights action under *Title 42, Section 1983, of the United States Code*, personal involvement in a constitutional deprivation is actionable, and a supervisor of a direct actor may be held liable if he or she affirmatively participated in the acts giving rise to the constitutional deprivation or if the supervisor's wrongful conduct is causally connected to the constitutional violation. *42 U.S.C.A. § 1983*; *Thompkins v. Belt, 828 F.2d 298, 303-04 (5th Cir. 1987)*; *Poteet v. Sullivan, 218 S.W.3d 780, 794 (Tex. App.—Fort Worth 2007, no pet.)*. There is legally sufficient evidence in this record from which the fact-finder could have rationally found, beyond a reasonable **[\*24]** doubt, that Reynolds engaged in actions that were tortious. *See Brooks, 323 S.W.3d at 912*.

*(3) Legally Sufficient Evidence Supports the Finding that Reynolds Knew the Actions Were Tortious*

Reynolds further contends that, because there was no clearly established right to be free from a warrantless search of a cell phone on June 14, 2012, there existed no clearly established right for A.K. to assert, and that there was no clearly established right of which Reynolds could have been aware at the time of the incident. We disagree.

In addition to showing that Reynolds' actions were unlawful, the State must show, beyond a reasonable doubt, that Reynolds knew her conduct was criminal, tortious, or both. *See Palacios, 2014 Tex. App. LEXIS 8313, 2014 WL 3778170, at \*3-4*. In addition, the State has the burden to show that Reynolds' conduct was not justified[16] or privileged. *See Zuliani v. State, 97 S.W.3d 589, 595 (Tex. Crim. App. 2003)*; *Lee v. State, 415 S.W.3d 915, 919 (Tex. App.—Texarkana 2013, pet. ref'd)*. If the evidence compels the fact-finder to find that Reynolds reasonably believed her conduct to be required or authorized by law, we must find that her actions were justified. *See Palacios, 2014 Tex. App. LEXIS 8313, 2014 WL 3778170, at \*4*; *see also Tex. Penal Code Ann. § 9.21(a)*. *HN11* A reasonable belief is one "that would be held by an ordinary and prudent [person] in the same circumstances as the actor." *Tex. Penal Code Ann. § 1.07(a)(42)* (West Supp. 2016).

---

[16] A party is justified when she "reasonably believes the conduct is required **[\*25]** or authorized by law [or] by the judgment or order of a competent court." *Tex. Penal Code Ann. § 9.21(a)* (West 2011).

*HN12* The concept of an individual having a fair warning that his or her conduct is unlawful is based on due process and founded on the principle that no person should "be held criminally liable for conduct which he could not reasonably understand to be proscribed." *United States v. Lanier, 520 U.S. 259, 265, 117 S. Ct. 1219, 137 L. Ed. 2d 432 (1997)* (quoting *Bouie v. City of Columbia, 378 U.S. 347, 351, 84 S. Ct. 1697, 12 L. Ed. 2d 894 (1964))*. Criminal liability may be imposed under the statute "for deprivation of a constitutional right if, but only if, 'in the light of pre-existing law the unlawfulness [under the Constitution is] apparent.'" *Id. at 271-72* (quoting *Anderson v. Creighton, 483 U.S. 635, 640, 107 S. Ct. 3034, 97 L. Ed. 2d 523 (1987))*.

Reynolds claims that the evidence shows she reasonably believed her actions were authorized by law, thereby justifying her conduct.[17] Pre-2012 cases, such as *Finley, Zavala*, and *Lemons*, establish that, on the date of the incident, individuals had an expectation of privacy in the contents of their cell phones; thus, a state actor must have had consent to search, a warrant to search, or there must have existed an exception to the warrant requirement, or a corresponding arrest at the time A.K.'s phone was seized.[18] None of these circumstances existed in the present case.

Moreover, there is evidence that all Department investigators are required to attend several days of training on the *Fourth Amendment* and that Reynolds completed such training well before the date of the incident at issue. We are in no way suggesting that the *Fourth Amendment* and its attendant exceptions are easily understood; however, the evidence suggests that at least three other Department employees believed Reynolds' actions to be unlawful. Notably, Fletcher explained to Reynolds that she had serious concerns about the Department remaining in possession of A.K.'s cell phone without A.K.'s consent. The fact-finder could have believed that Fletcher's obvious apprehensiveness should have, at the very least, placed Reynolds on notice that her unilateral decision to continue in possession of A.K.'s cell phone for the sole purpose of searching the phone for evidence of drug activity was an unlawful act. Further, Reynolds was in a supervisory position at the time; thus, it was also reasonable to believe that, if Reynolds' subordinates knew her actions were unlawful, Reynolds knew her actions were unlawful as well.

The **[*28]** question is not whether this Court believes that the evidence at trial established beyond a reasonable doubt that Reynolds committed the offense of official oppression. Instead, the relevant question is whether, after viewing the evidence in the light most favorable to the trial court's verdict, any rational trier of fact could have found beyond a reasonable doubt that Reynolds was guilty of doing so. *Jackson, 443 U.S. at 318-19*. In viewing the evidence in the light most favorable to the verdict, we find

---

[17] Reynolds also maintains that had this been a civil proceeding, **[*26]** qualified immunity would have protected her from liability. We disagree. "Qualified immunity shields government officials from civil damages unless the official violated a statutory or constitutional right that was clearly established at the time of the challenged conduct." *See Reichle v. Howards, 132 S.Ct. 2088, 2093, 182 L. Ed. 2d 985 (2012)*. Reynolds contends that, even if A.K.'s rights and the scope of Reynolds' permissible conduct were clearly established, qualified immunity protects her if it was objectively reasonable for her to believe that her actions were lawful at the time of the incident. *See Anderson v. Creighton, 483 U.S. 635, 638-39, 107 S. Ct. 3034, 97 L. Ed. 2d 523 (1987)*. In addition, Reynolds asserts that, if she acted reasonably, but mistakenly, she would be entitled to qualified immunity. *Id. at 641*.

For the reasons stated herein, we conclude there was sufficient evidence to support the trial court's conclusion that Reynolds' actions were clearly established as violating the law at the time of the incident, that she had knowledge that her actions were unlawful, and that she did not act "reasonably but mistakenly."

[18] Recently, the United States Supreme Court broadened the view that an individual has a reasonable expectation of privacy in the contents of his or her cell phone when it unanimously held that the warrantless search **[*27]** and seizure of the digital contents of a person's cell phone during an arrest is unconstitutional. *Riley v. California, 134 S.Ct. 2473, 189 L. Ed. 2d 430 (2014)*.

the trial court could have concluded beyond a reasonable doubt that Reynolds, either individually or acting as a party with Ross, intentionally subjected A.K. to an unlawful search and/or seizure that she knew was tortious at the time and that there existed no justification or privilege to excuse Reynolds' actions.

The evidence was sufficient to support the trial court's verdict. We overrule Reynolds point of error.[19]

We affirm the trial court's judgment.

Josh R. Morriss, III

Chief Justice

Date Submitted: September 28, 2016

Date Decided: November 30, 2016

Publish

---

**End of Document**

---

[19] Reynolds acted as an agent of the Department, not as a peace officer—*see Tex. Code Crim. Proc. Ann. art. 2.12* (West Supp.2016) (defining "Who Are Peace Officers")—and was acting without the benefit of any court order or search warrant. *Compare Tex. Fam. Code Ann. § 261.303(b)* (West Supp. 2016) (order for entrance) *with Tex. Code Crim. Proc. Ann. art. 18.01(a)* (West Supp. 2016) (search warrant). Our opinion **[*29]** should not be understood as applying beyond its facts.