

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

———————————————

No. 02-19-00156-CR

———————————————

JERRY LEE HAAG, Appellant

V.

THE STATE OF TEXAS

---

On Appeal from the 355th District Court
Hood County, Texas
Trial Court No. CR14037

---

Before Kerr, Birdwell, and Wallach, JJ.
Memorandum Opinion by Justice Wallach

## MEMORANDUM OPINION

Jerry Lee Haag appeals from his conviction and forty-year sentence for possession of four or more but less than two hundred grams of methamphetamine with the intent to deliver. *See* Tex. Health & Safety Code Ann. § 481.112(a), (d). In two issues on appeal, he contends that the trial court abused its discretion by denying his pretrial motion to suppress and that his counsel was ineffective. We affirm.

## Background

In 2017, then Hood County Sheriff's Deputy[1] Spencer Batchelor pulled Haag over for speeding and making an unsafe lane change. Batchelor ran a computer check on the Honda Civic's license plate and determined that the car was registered to Haag. Batchelor also learned that the Hood County Sheriff's Office had received information that a "Jerry Haag" in Hood County, who drove a Honda Civic, had been purchasing methamphetamine in Fort Worth and then driving back to his known address in Hood County to sell it.

Haag was the car's sole occupant, and Batchelor noticed that Haag was nervous, shaking, and had shallow breathing. Haag could not find a driver's license and did not have proof of insurance, but he gave Batchelor his name and date of

---

[1]By the time of Haag's prosecution, Batchelor was a police officer in Palmer, Texas.

birth.[2] Haag told Batchelor he had been in Fort Worth having dinner with his girlfriend. Batchelor "confronted [Haag] with knowledge that [he] had prior to the stop that [he] had of [Haag] and . . . asked him if the statements . . . were true."[3] Haag said those statements were not true. Batchelor also asked Haag if he had anything illegal in the car, and Haag said no. Batchelor noticed a butane torch lighter in the car; according to Batchelor, such a lighter produces more heat than a regular lighter and is therefore used to smoke drugs rather than cigarettes.

Batchelor asked Haag for consent to search the car, and Haag "provided consent." Batchelor then had Haag step out of the car, and he did a pat-down search at the back of the car. Batchelor felt something in Haag's pocket; he asked Haag what it was, and Haag told him it was money. Batchelor then asked Haag if he could reach into the pocket. According to Batchelor, Haag "gave . . . consent." Batchelor removed $400 from Haag's pocket. Batchelor then called another unit to the stop so that he could perform what he called "the consensual search."

Batchelor started searching the car before the other unit arrived. In the car's center glove box, Batchelor found a clear bag containing what he believed to be methamphetamine. He then handcuffed Haag "for . . . safety" until the other unit

---

[2]Batchelor was able eventually to obtain Haag's driver's license information by looking up his name and birthdate in the State of Texas database.

[3]Batchelor did not testify to the content of the statements. Presumably, he referred to the information that Haag was buying methamphetamine in Fort Worth and transporting it to Granbury to sell.

arrived. Batchelor told Haag that he was detaining him because he had found a bag of methamphetamine in the car. In response, Haag stated that his friend had left the methamphetamine in the car and that he had moved the methamphetamine to the glove box because he did not want his daughter to find it.

Two other officers[4] arrived shortly after Batchelor resumed his search. Batchelor then found—in a concealed location under the gear box, which appeared to have been tampered with—a digital scale with crystalline residue on it and another bag of what appeared to be methamphetamine.[5] Haag denied knowing anything about this bag. After Batchelor field tested the substances in the bags, which "showed to be positive for an amphetamine," Batchelor asked Haag if his phone had any "dope talk" on it; Haag said no and also denied knowing anything about the second bag of methamphetamine.[6] According to Batchelor, Haag then consented to a search of his cell phone, on which Batchelor found "several communications back and forth for negotiations of illegal narcotics." Batchelor then "placed [Haag] under arrest" and read him his *Miranda* warnings, which Haag waived.

---

[4]One of the officers, a trainee, assisted Batchelor with the rest of the search. The training officer mostly "stood back and waited while the trainee . . . was assisting Batchelor." However, the training officer did at one point go to the driver's side of Haag's car to shine a flashlight on the gear selector when Batchelor was opening it.

[5]At trial, Batchelor specified that there were multiple baggies in a manila envelope. He also testified that he found a meth pipe with residue in it and another scale.

[6]Haag also denied knowing about any of the other items found in the car.

After a grand jury indicted Haag for possession of methamphetamine with the intent to deliver, Haag filed a pretrial motion to suppress the items found in the search, as well as his statements to Batchelor. Batchelor was the sole witness at the hearing on the motion; there was no video of the stop. The trial court denied the motion to suppress. A jury convicted Haag of the charged offense and assessed his punishment, which included a $5,000 fine in addition to forty years' confinement. Haag then filed this appeal.

## Motion to Suppress

In his first issue, Haag generally contends that the trial court abused its discretion by refusing to suppress the evidence Batchelor found in the car and Haag's statements to Batchelor. Haag includes two subarguments: (1) the State did not prove by clear and convincing evidence that he voluntarily consented to the search of his car and cell phone; and (2) the State did not prove that he voluntarily made the statements to Batchelor because he made them after Batchelor had arrested him without the required constitutional and statutory warnings. *See Miranda v. Arizona*, 384 U.S. 436, 478–79, 86 S. Ct. 1602, 1630 (1966); Tex. Code Crim. Proc. Ann. arts. 38.21–.22.

### Standard of Review

We apply a bifurcated standard of review to a trial court's ruling on a motion to suppress evidence. *Amador v. State*, 221 S.W.3d 666, 673 (Tex. Crim. App. 2007); *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997). We defer almost totally to

a trial court's rulings on questions of historical fact and application-of-law-to-fact questions that turn on evaluating credibility and demeanor, but we review de novo application-of-law-to-fact questions that do not turn on credibility and demeanor. *Amador*, 221 S.W.3d at 673; *Estrada v. State*, 154 S.W.3d 604, 607 (Tex. Crim. App. 2005); *Johnson v. State*, 68 S.W.3d 644, 652–53 (Tex. Crim. App. 2002).

### Haag's Consent Voluntary

Batchelor provided the only evidence at the suppression hearing.[7] Haag claims that Batchelor's testimony that he "provided consent," standing alone, cannot constitute clear and convincing evidence that he consented to the search of either his car or his cell phone.

### Applicable Law

Voluntary consent is an exception to the warrant requirement for searches; a person may give such consent orally or by action. *Valtierra v. State*, 310 S.W.3d 442, 448 (Tex. Crim. App. 2010). The State must prove the voluntariness of consent by clear and convincing evidence. *See Meekins v. State*, 340 S.W.3d 454, 459 (Tex. Crim. App. 2011). This burden "requires the prosecution to show the consent given was

---

[7]Likewise, Batchelor was the primary witness at trial; only one other witness testified—another of the officers present—and he did not testify about the voluntariness of the consent to search or Haag's statements to Batchelor. Because at trial the parties consensually relitigated the voluntariness of Haag's consent to search––but not the voluntariness of Haag's statements—through Batchelor's testimony, we consider that evidence in addition to the evidence adduced at the suppression hearing. *See Gutierrez v. State*, 221 S.W.3d 680, 687 (Tex. Crim. App. 2007); *Rachal v. State*, 917 S.W.2d 799, 809 (Tex. Crim. App. 1996).

positive[,] unequivocal[,] and [without] duress or coercion, actual or implied." *State v. Weaver*, 349 S.W.3d 521, 526 (Tex. Crim. App. 2011). The voluntariness of consent to a search is a question of fact to be determined from all the circumstances. *Weaver,* 349 S.W.3d at 526; *Meekins,* 340 S.W.3d at 460. Factors a court may consider in determining the voluntariness of consent include (1) the length of detention before giving consent, (2) whether the defendant was physically mistreated, (3) whether the police used violence or threats of violence, (4) whether the police made promises or inducements, (5) whether the police used deception or trickery, (6) the physical and mental condition and capacity of the defendant, (7) and whether the police told the defendant that he had a right to refuse consent. *Tucker v. State*, 369 S.W.3d 179, 185 (Tex. Crim. App. 2012); *see also Rodriguez v. State*, No. 02-17-00283-CR, 2018 WL 2343663, at *4 (Tex. App.—Fort Worth May 24, 2018, no pet.) (mem. op., not designated for publication) (applying factors).

**Applicable Facts**

The record of the motion to suppress hearing is only fifteen pages long. When describing the initial search of Haag's car, Batchelor testified that Haag had "provided consent" and described the search as "a consensual search." Batchelor stated that Haag provided his consent about four or five minutes into the stop. At that point, Batchelor had not yet completed "all the tasks associated with the traffic stop," including completely identifying Haag, running the computer check of his driver's license to determine if he was "current and eligible to even be operating a motor

7

vehicle," and writing a citation for the traffic violations he had witnessed. When describing the cell phone search, Batchelor testified, "I asked for consent on two separate occasions before searching the phone. On both times he provided consent [and] showed me how to unlock the phone."

**Analysis**

An officer's testimony that consent was voluntarily given can be sufficient evidence to prove the voluntariness of the consent. *Kelly v. State*, 331 S.W.3d 541, 547 (Tex. App.—Houston [14th Dist.] 2011, pet. ref'd). Batchelor did not testify to any coercive actions in obtaining the consent. *See Martinez v. State*, 17 S.W.3d 677, 683 (Tex. Crim. App. 2000). Haag was outside of his car, not handcuffed, while Batchelor performed the initial search of the car, and even though by the time Haag gave his consent to search the cell phone he was handcuffed and another officer had arrived, he gave that consent twice and twice showed Batchelor how to unlock the phone. These actions go beyond mere silence in the face of the officer's search. *See Weaver*, 349 S.W.3d at 526 ("[A] person's silence in the face of an officer's further actions may imply consent to that further action."); *Lemons v. State*, 298 S.W.3d 658, 662 (Tex. App.—Tyler 2009, pet. ref'd) ("Appellant's failure to object to Thornhill's continued search of his phone after bestowing on him such general consent to search was an indication that Thornhill's search was within the scope of Appellant's initial consent.").

8

Based on the totality of the circumstances, we conclude that the trial court did not abuse its discretion by determining—based solely on Batchelor's testimony—that the State presented clear and convincing evidence of Haag's consent to the searches of his car and cell phone.

**Haag's Statements Voluntary**

In the second part of his first issue, Haag argues that the State failed to meet its burden to prove that Haag's statements to Batchelor were made voluntarily or in compliance with Code of Criminal Procedure Article 38.22. Tex. Code Crim. Proc. Ann. art. 38.22. The crux of his argument appears to be that he was already in custody by the time Batchelor questioned him—without prior *Miranda* and Article 38.22 warnings—about the first bag of methamphetamine found in the center console, but Haag also appears to challenge the voluntariness of his statements to Batchelor generally. *See Oursbourn v. State*, 259 S.W.3d 159, 169 (Tex. Crim. App. 2008). Although the trial judge did not enter findings of fact and conclusions of law when he denied the motion to suppress, he did so while this appeal has been pending. We therefore consider those findings and conclusions in our analysis. *See State v. Kelly*, 204 S.W.3d 808, 818 (Tex. Crim. App. 2006) (noting that when findings of fact and conclusions of law are filed, we determine whether the evidence supports the trial court's fact findings and review the trial court's legal conclusions de novo). The trial judge found that all of Haag's statements to Batchelor were voluntarily made, that all

of those statements were made before Haag's arrest, and that Haag was not arrested until Batchelor "informed him that he was under arrest."

**Applicable Law**

Only an accused's voluntary statements to law enforcement are admissible at trial. *See* Tex. Code Crim. Proc. Ann. art. 38.21, art. 38.22, §§ 2–3, 6; *Oursbourn*, 259 S.W.3d at 169–71. An accused's statement arising from custodial interrogation is admissible under Texas law only if law enforcement properly warned the accused of his constitutional and statutory rights—and the accused knowingly, intelligently, and voluntarily waived those rights—before making the statement. *Oursbourn*, 259 S.W.3d at 171–72. Likewise, under Texas law, noncustodial statements to law enforcement are admissible only if voluntarily made. Tex. Code Crim. Proc. Ann. art. 38.22, § 6; *Oursbourn*, 259 S.W.3d at 172–73. Although we consider whether the evidence shows coercive police behavior, we may also consider other factors such as illness, mental capacity, intoxication, and other facts that would show a statement was involuntarily made. *Oursbourn*, 259 S.W.3d at 172–73.

To determine the type of Batchelor's encounter with Haag at the time Haag made the complained-of statements—either an investigative detention only or an arrest requiring prior, waived *Miranda* and Article 38.22, Section 3 warnings—we must examine the totality of the circumstances from an objective view on an ad hoc basis. *Curtis v. State*, 238 S.W.3d 376, 379 (Tex. Crim. App. 2007). Generally, a detention involving police action that is more than necessary to simply safeguard the officers

10

and ensure the suspect's presence during an investigatory period is an arrest. *State v. Sheppard*, 271 S.W.3d 281, 291 (Tex. Crim. App. 2008). The primary question in determining whether a person has been detained to the degree associated with an arrest is whether a reasonable innocent person would perceive the detention to be a restraint on movement comparable to a formal arrest, under all of the objective circumstances. *Stansbury v. California*, 511 U.S. 318, 322, 114 S. Ct. 1526, 1528–29 (1994); *Florida v. Bostick*, 501 U.S. 429, 438, 111 S. Ct. 2382, 2388 (1991); *Dowthitt v. State*, 931 S.W.2d 244, 254 (Tex. Crim. App. 1996). A person may be in custody, necessitating *Miranda* and Article 38.22 warnings, when the person is physically deprived of his freedom of action in any significant way or when an officer creates a situation that would lead a reasonable person to believe that his freedom of movement has been significantly restricted. *See Dowthitt*, 931 S.W.2d at 255.

Factors that we may consider in determining whether the officers' actions indicate an arrest rather than an investigative detention include the degree of force employed, the duration of the detention, the nature of the crime under investigation, the degree of suspicion, the location of the detention, the time of day, the suspect's reaction, whether the officer actually conducts an investigation, the efficiency of the investigative process, and what the officer may have told the detained person. *See Sheppard*, 271 S.W.3d at 291; *Campbell v. State*, 325 S.W.3d 223, 234 (Tex. App.—Fort Worth 2010, no pet.). Even the act of handcuffing a detained person does not necessarily establish an arrest but is only a relevant factor in determining whether a

11

person is in custody. *See Kuether v. State*, 523 S.W.3d 798, 808 (Tex. App.—Houston [14th Dist.] 2017, pet. ref'd).

### Applicable Facts

Batchelor testified that he made the stop a little after midnight on Highway 377. Batchelor asked Haag why he was nervous, "advised [Haag that he had] observed some indicators that [officers] look for [regarding] other criminal activity," and began talking to Haag about that. He allowed Haag time to look for his driver's license and asked for consent to search the car about four or five minutes after initiating the stop. After Haag consented, Batchelor had him step out of the car, and Batchelor went back to his patrol car to radio for another officer. Haag stood outside the car while Batchelor performed the initial search. The evidence shows that until this point, Batchelor was conducting a fairly routine traffic stop.

Batchelor told Haag that he was being detained when he placed the handcuffs on him. When Haag "made a comment, something along the lines of I'm sure you'll tell me why I'm being detained," Batchelor told him that he had found a bag of methamphetamine in the car, "and that's when [Haag] stated that his friend left it in there and that he didn't want his daughter to find [it,] so he put it in the center glove box." Batchelor had not yet field tested the substance in the bag when he told Haag what he had found.

No evidence shows the location of the trainee officer during the search. Likewise, no evidence shows the location of the training officer in relation to Haag.

After Batchelor found the scale and the other bag containing methamphetamine, he "advised" Haag, who was still handcuffed, of what he had found. Batchelor then asked Haag if there would be any "dope talk" on his phone; Haag said no, but then he twice consented to a search of his cell phone and twice showed Batchelor how to unlock the phone.

**Analysis**

No evidence shows that Batchelor used any force other than handcuffing Haag for safety or that Batchelor unnecessarily prolonged the stop beyond what was needed for his investigation. Although Haag was nervous and Batchelor had a high degree of suspicion of at least possession of methamphetamine, Batchelor told Haag only that he was being detained, not that he was under arrest. The totality of the circumstances supports the conclusion that Haag's statement about moving the first bag into the console was spontaneously made. Even though Haag consented to Batchelor's searches, he nevertheless denied knowing about the additional methamphetamine and other drug-related paraphernalia; thus, the circumstances do not support a conclusion that Haag was coerced to admit knowing about or using the items showing an intent to deliver.[8]

---

[8]In fact, Haag's statements to Batchelor are the only evidence tending to show that Haag was guilty solely of possessing less than one gram of methamphetamine—the bag found in the center console—rather than possessing a much larger quantity to sell, an offense with a higher minimum and maximum punishment. *Compare* Tex. Health & Safety Code Ann. § 481.115(c) (making possession of less than one gram a state-jail felony), *with* § 481.112(d) (making possession of four or more but less than

Based on the totality of the circumstances, we hold that the trial court did not err by determining that Batchelor had not yet arrested Haag when Haag made the statements[9] sought to be suppressed and, therefore, that those statements were not the product of custodial interrogation requiring *Miranda* and Article 38.22 warnings. We also hold that the evidence supports the trial court's fact finding that all of Haag's statements to Batchelor were voluntarily made in general. We overrule Haag's first issue.

## Trial Counsel Not Ineffective

In his second issue, Haag claims that his trial counsel was ineffective for failing to cross-examine Batchelor at the suppression hearing regarding the alleged involuntariness of Haag's consent to search, for failing to object at trial to the labeling of the scales and methamphetamine—admitted as exhibits—naming Haag the

---

two hundred grams with intent to deliver a first-degree felony); *see* Tex. Penal Code Ann. §§ 12.35(a) (making general range of confinement for state-jail felony 180 months to 2 years). Haag's first-degree felony conviction was enhanced by a prior final felony conviction, *see* Tex. Penal Code Ann. § 12.42(c)(1), but his punishment could not have been enhanced if he had been convicted solely of the state-jail felony, *see id.* §§ 12.35, .425.

[9]Even if Haag had been under arrest when he admitted moving the first bag to the center glove box, the trial court would not have erred by denying suppression of that statement for lack of the required warnings because, according to Batchelor, that statement was spontaneous and voluntary and, therefore, not the product of custodial interrogation. *See Dossett v. State*, 216 S.W.3d 7, 23–24 (Tex. App.—San Antonio 2006, pet. ref'd).

"owner" of the items, and for failing to object at trial to the admission of text messages from Haag's cell phone on hearsay grounds.

**Standard of Review**

The Sixth Amendment guarantees a criminal defendant the effective assistance of counsel. *Ex parte Scott*, 541 S.W.3d 104, 114 (Tex. Crim. App. 2017); *see* U.S. Const. amend. VI. To establish ineffective assistance, an appellant must prove by a preponderance of the evidence that his counsel's representation was deficient and that the deficiency prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984); *Nava v. State*, 415 S.W.3d 289, 307 (Tex. Crim. App. 2013).

In evaluating counsel's effectiveness under the deficient-performance prong, we review the totality of the representation and the particular circumstances of the case to determine whether counsel provided reasonable assistance under all the circumstances and prevailing professional norms at the time of the alleged error. *See Strickland*, 466 U.S. at 688–89, 104 S. Ct. at 2065; *Nava*, 415 S.W.3d at 307; *Thompson v. State*, 9 S.W.3d 808, 813–14 (Tex. Crim. App. 1999). Our review of counsel's representation is highly deferential, and we indulge a strong presumption that counsel's conduct was not deficient. *Nava*, 415 S.W.3d at 307–08.

An appellate court may not infer ineffective assistance simply from an unclear record or a record that does not show why counsel failed to do something. *Menefield v.*

*State*, 363 S.W.3d 591, 593 (Tex. Crim. App. 2012); *Mata v. State*, 226 S.W.3d 425, 432 (Tex. Crim. App. 2007). "[T]rial counsel should ordinarily be afforded an opportunity to explain his actions before being denounced as ineffective." *Rylander v. State,* 101 S.W.3d 107, 111 (Tex. Crim. App. 2003). If trial counsel did not have that opportunity, we should not conclude that counsel performed deficiently unless the challenged conduct was "so outrageous that no competent attorney would have engaged in it." *Garcia v. State,* 57 S.W.3d 436, 440 (Tex. Crim. App. 2001). Direct appeal is usually inadequate for raising an ineffective-assistance-of-counsel claim because the record generally does not show counsel's reasons for any alleged deficient performance. *See Menefield*, 363 S.W.3d at 592–93; *Thompson*, 9 S.W.3d at 813–14.

*Strickland*'s prejudice prong requires a showing that counsel's errors were so serious that they deprived the defendant of a fair trial—that is, a trial with a reliable result. *Strickland*, 466 U.S. at 687, 104 S. Ct. at 2064. In other words, an appellant must show a reasonable probability that the proceeding would have turned out differently without the deficient performance. *Id.* at 694, 104 S. Ct. at 2068; *Nava*, 415 S.W.3d at 308. A "reasonable probability" is a probability sufficient to undermine confidence in the outcome. *Strickland*, 466 U.S. at 694, 104 S. Ct. at 2068; *Nava*, 415 S.W.3d at 308. We must ultimately focus on examining the fundamental fairness of the proceeding in which the result is being challenged. *Strickland*, 466 U.S. at 696, 104 S. Ct. at 2069. "[A] verdict or conclusion only weakly supported by the record is more likely to have

16

been affected by errors than one with overwhelming record support." *Id.*, 104 S. Ct. at 2069.

"[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." *Strickland*, 466 U.S. at 690, 104 S. Ct. at 2066. Additionally, counsel cannot be deficient for failing to object unless the trial court would have abused its discretion by overruling the objection. *Prine v. State*, 537 S.W.3d 113, 117–18 (Tex. Crim. App. 2017); *cf. State v. Gutierrez*, 541 S.W.3d 91, 99–103 (Tex. Crim. App. 2017) (concluding that appellant could not show prejudice because the record did not show that the trial judge—at the time appellant contended his attorney should have asked for a mistrial—would likely have granted a mistrial and because the trial judge would not have erred by denying a mistrial motion).

**Analysis**

Nothing in the record shows why Haag's trial counsel did not cross-examine Batchelor at the suppression hearing. Because cross-examination is inherently risky, rarely can we in hindsight judge adequately a decision to refrain from cross-examining a witness. *Ex parte McFarland*, 163 S.W.3d 743, 756 (Tex. Crim. App. 2005). Strategically, "it can be more effective to refrain from cross-examining a damaging witness to minimize the impact of his testimony." *Jones v. State*, 500 S.W.3d 106, 115 (Tex. App.—Houston [1st Dist.] 2016, no pet.). Without a more developed

record explaining counsel's strategy or indicating what Batchelor's testimony upon cross-examination might have been,[10] we hold that Haag has not overcome the strong presumption that his trial counsel's decision not to cross-examine Batchelor at the suppression hearing was so outrageous that no competent attorney would have done the same. *See Id.* at 115.

As for counsel's alleged failures to object at trial, Haag has not shown a reasonable probability that the proceeding would have turned out differently had counsel successfully objected. Although the State elicited Batchelor's testimony that the admitted physical exhibits—including scales and baggies of methamphetamine— contained labels identifying Haag as the "Owner," the State had already elicited extensive testimony from Batchelor about his search of the car and the items he found, as well as the evidence that Haag was that car's owner and sole occupant. The State also elicited Batchelor's testimony that the exhibits contained the same items Batchelor had found during his search of the Honda and that he was the person who had placed the items into evidence bags and secured those evidence bags in the Sheriff's Department evidence lockers. Considering the other probative evidence connecting Haag to the items indicating an intent to sell methamphetamine, we cannot say that the proceeding's outcome would have been different but for trial

---

[10]The record supports the inference that Haag's counsel attempted to show that Haag intended only to possess the methamphetamine in the center console and was merely a methamphetamine user rather than a seller.

counsel's failure to object to either the "Owner" labels or Batchelor's testimony confirming that the labels named Haag as the items' owner.

The same holds for Batchelor's testimony that Haag's cell phone contained messages indicating one person had tried to buy "candy" from him and that another person had tried to buy a bowl from him. Immediately after this testimony, Haag's trial counsel began cross-examining Batchelor; he asked whether those messages had discussed pricing and also asked about the diminishing quality of methamphetamine as it moves farther from the source, such as Fort Worth. Haag's counsel had previously elicited testimony from Batchelor that Haag might have been under the influence of methamphetamine at the time of the stop and that narcotics users often "share with each other." Thus, not only does the record show trial counsel's strategy that would explain why he did not object to the testimony—to portray Haag as only a methamphetamine user who simply bought better-quality methamphetamine in Fort Worth—Batchelor's description of the text messages is not so overwhelming in the face of the other evidence that Haag possessed all of the items in the car showing an intent to sell methamphetamine that we could conclude that there is a reasonable probability that the proceeding's outcome would have been different.

We hold that Haag has not shown by a preponderance of the evidence that his trial counsel was ineffective or that any deficient performance prejudiced the defense. Therefore, we overrule Haag's second issue.

19

**Conclusion**

Because we have overruled Haag's two issues on appeal, we affirm the trial court's judgment.

/s/ Mike Wallach
Mike Wallach
Justice

Do Not Publish
Tex. R. App. P. 47.2(b)

Delivered: December 23, 2020